LA SALLE NATIONAL BANK, TRUSTEE, *et al.*, Plaintiffs-Appellants, v. TRIUMVERA HOMEOWNERS ASSOCIATION, Defendant-Appellee (Triumvera Homeowners Association, Plaintiff, v. JOSEPH ZEKAS *et al.*, Defendants).

First District (4th Division)  No. 84—762

Opinion filed March 28, 1985.—Modified on denial of rehearing June 13, 1985.

Levy & Erens, of Chicago, for appellants.

Marshall N. Dickler, Ltd., of Arlington Heights, for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

This is a declaratory judgment action seeking a declaration that the plaintiffs, La Salle National Bank, as trustee, and Joseph Zekas and TA Associates, as general partners of SRA-Triumvera, an Illinois Limited Partnership (collectively SRA), are the owners of 80 individual condominium units as defined by the Master Declaration. The effect of declaring SRA the owner of these 80 units is directly related to the propriety of SRA's attempt to rent the units as opposed to offering them for sale. Such rental activity was the subject of a previous proceeding before this court but is not germane to this action. See *La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 440 N.E.2d 1073.

The case at bar is on an interlocutory appeal from the trial court's judgment order which granted the defendant Triumvera Homeowners Association's (Homeowners) cross-motion for summary judgment and denied SRA's renewed motion for summary judgment. In its order the trial court declared that SRA was not the owner, as defined by the Master Declaration, of 80 individual condominium units despite SRA's

supporting documentation of 80 certified copies of Torrens certificates, one for each of the 80 condominium units in question, with each naming the trustee, the legal representative of the instant property that was held in land trust, the owner in fee simple of a particular condominium unit.

The instant dispute involves a condominium development in Glenview known as Triumvera, in which three separate parcels of land are of particular relevance to the case at bar. As noted above, the property for this development was held in a land trust, with La Salle National Bank as trustee. This property had been registered with the Torrens office since 1912. The Torrens certificate reflected that in May 1974 the trustee filed a "Declaration of Covenants, Restrictions, Conditions and Easements" (Master Declaration). In 1975, 1976 and 1978, the Torrens office apparently issued three certificates of title naming the trustee as legal owner of the underlying land for each parcel. Each of these certificates reflected on their memorials that in December 1979 and June 1980 the trustee filed with the Torrens office, pursuant to statutory authority (see Ill. Rev. Stat. 1983, ch. 30, pars. 303, 305) declarations of condominium ownership and plats of survey submitting the instant property to the Condominium Property Act. Each of the three parcels of property was to be improved with a condominium building containing 60 condominium units each. The memorials on these certificates also reflected that between December 1979 and March 1982, 100 of the 180 units within the above three buildings were sold and conveyed by the trustee. These conveyances were evidenced by notations on the memorials of the filing of deeds for each of the 100 transactions. Furthermore, on March 30, 1982, Triumvera, Inc., a prior assignee, assigned 100% of the beneficial interest in the instant land trust to SRA-Triumvera, a limited partnership. SRA-Triumvera also assumed a mortgage of approximately $5 million on the last 80 units which had not yet been sold. Subsequently, pursuant to an earlier "split order" requested by a representative of the trustee, the Torrens office first issued three blanket certificates, one for each of the three instant parcels, with each certificate listing the 60 units per parcel, and then it issued 80 separate Torrens certificates, one for each of the unconveyed units.

The instant property has been involved in protracted litigation, and finally, after a series of pleadings and hearings on the subject of ownership, the trial court entered an order in favor of the Homeowners and against SRA finding that SRA was not the "Owner," as defined by the Master Declaration, of the 80 individual condominium units because SRA had not registered deeds to any of the 80 units with

the Torrens office. It is from this order that the instant appeal ensued.

■ The single issue in this appeal is rather straightforward; whether SRA is the owner of the 80 individual condominium units as defined by the Master Declaration.

Under the well-established interpretation of an Illinois land trust, the interests of the trustee and the beneficiary together aggregate fee simple ownership. (See *Robinson v. Chicago National Bank* (1961), 32 Ill. App. 2d 55, 176 N.E.2d 659.) To determine ownership to land in Cook County, the Torrens system of land registration is used wherein title to real estate is evidenced by the certificate issued by the Torrens office. (See *People v. Mortenson* (1949), 404 Ill. 107, 88 N.E.2d 35.) The certificate of title contains the name of the owner, legal description of the land, nature of the estate of the owner therein and by memorial contains a description of all estates, easements, encumbrances, liens, interests and charges to which the estate of the owner is subject. (Ill. Rev. Stat. 1983, ch. 30, par. 74.) Under the Torrens Act, the term certificate of title includes all memorials noted thereon. Ill. Rev. Stat. 1983, ch. 30, par. 79.

With regard to condominiums, in order to submit property to the Condominium Property Act, the owner or owners in fee simple for a parcel of land must record a declaration and plat. Thereafter, the property shall be subject to the provisions of the Act, and all units shall thereupon be capable of ownership in fee simple and may thereafter be conveyed. (See Ill. Rev. Stat. 1983, ch. 30, pars. 303, 305, 306.) Furthermore, the Act permits the declaration of condominium ownership to include "[s]uch other lawful provisions not inconsistent with the provisions of this Act ***." (Ill. Rev. Stat. 1983, ch. 30, par. 304(i).) In the instant case, each declaration filed by the trustee with respect to the three buildings subjected the condominium units therein to the Master Declaration. The Master Declaration provided the following pertinent definitions:

> "1.12 Owner: A record owner, whether one or more Persons of a fee simple title to any Dwelling Unit. ***
>
> 1.20 Record: To file in the office of the Registrar of Titles of Cook County, Illinois.
>
> 1.11 Dwelling Unit: One single family residential unit in a Condominium created under a Declaration of Condominium Ownership which submits a portion of the Premises to the Act ***."

The Homeowners assert that the above definition of "owner" means a record owner, which status can only be achieved by a filing in the Torrens office. The Homeowners argue that in order to satisfy

these definitions, SRA must register with the Torrens office a deed to each individual condominium unit. Furthermore, the Homeowners assert that absent such a registration all Torrens certificates issued to SRA are in contravention of the Master Declaration and statutes discussed below and are thus ineffective as evidence of fee simple title. The progression of the Homeowners' analysis is based on a combination of statutory provisions provided in the Torrens and Conveyancing acts. First, the Homeowners argue that under the Torrens Act, in order to register fee simple title to a dwelling unit, "[a]n owner of registered land may use any form of deed, mortgage, lease or other instrument which is legally sufficient for the purpose intended [and that] the act of registration shall be the operative act to convey or affect registered land." (Ill. Rev. Stat. 1983, ch. 30, par. 93.) Next, the Homeowners argue that, under the Conveyancing Act, in order to convey fee simple to a dwelling unit, it is necessary to have a deed of conveyance. (See Ill. Rev. Stat. 1983, ch. 30, par. 8.) Accordingly, the Homeowners contend that pursuant to the statutory provisions, as well as the Master Declaration, SRA must register a deed with the Torrens office, *i.e.*, the operative act to convey registered land, in order to be considered an "Owner" and to validate the issuance of the 80 Torrens certificates.

We believe the Homeowners' contention is incorrect. The underlying failure in the Homeowners' position that SRA must register a deed is in their twofold premise; (1) that in order to become an "Owner" when submitting a parcel of land to the Condominium Property Act there must be a conveyance; and that (2) absent such a conveyance, title to newly created dwelling units under the Condominium Property Act does not vest in the party submitting the property to that Act.

Contrary to the Homeowners' first premise, that in order to become an owner when submitting land to the Condominium Property Act there must be a conveyance, is the fact that the registration of the declarations of condominium ownership and plats of survey is the operative act that *affects* the registered land. (See Ill. Rev. Stat. 1983, ch. 30, par. 93.) The Torrens Act provides that the act of registration is the operative act to convey or affect registered land and that an owner of registered land may use any form of deed, mortgage, lease or other instrument which is legally sufficient for the purpose intended. (Ill. Rev. Stat. 1983, ch. 30, par. 93.) The purpose intended by the registration of declarations of condominium ownership and plats of survey, *i.e.*, "other instruments," is to create condominium units and to vest title to those units in a fee simple owner of the underlying land. (See 15A Am. Jur. 2d *Condominiums* sec. 26, at 854-55 (1976); 28 U. Miami L. Rev.

451 (1974).) Declarations of condominium ownership and plats of survey are legally sufficient for such purpose. (Ill. Rev. Stat. 1983, ch. 30, par. 306.) The registration of these documents changes the character of the property from a single parcel of land into separate dwelling units. Such a transition is not tantamount to a conveyance.

■ Based on the Homeowners' second premise that title, absent a conveyance, to land submitted to the Condominium Property Act does not vest in the owner of the underlying land, the Homeowners argue that the language of section 6 of the Condominium Property Act mandates that after registration of a declaration and plat the "units [may] *thereupon* be capable of ownership and may *thereafter* be conveyed," thus indicating that the legal effect of registering the declarations and plats is not to vest fee simple title at the time of registration, but rather after the units have been conveyed. This conclusion is not acceptable because under such a scenario, ownership to the units would not exist until a subsequent conveyance by deed, and we do not believe the statute was intended to create a situation wherein the state of title can remain in an indefinite period of suspension. The Homeowners' argument must be further rejected by reason of two additional legal anomalies that would result if we accepted their position. If this court concluded that SRA needed a deed in order to be considered the owner of the 80 condominium units, the following would necessarily be true: (1) each of the 100 units conveyed from the trustee to individual purchasers would be an ineffective conveyance because the grantor cannot convey greater title than he owns and the trustee, as grantor, does not have title to these units; and (2) the trustee, as grantor, in order to be owner, would have to deed the dwelling unit to itself, contrary to a general rule that a party may not deed property to himself. Accordingly, we conclude that the Condominium Property Act does not require that a deed be filed in order for a party to be considered an owner of a condominium unit.

■ Finally, the Homeowners assert that because of the dichotomy in the terms "owner" and "developer/declarant," as used in the Master Declaration and the Condominium Property Act, SRA, contrary to its assertion, cannot be both owner and developer/declarant at the same time. It should be noted that in the first proceeding before this court, that particular issue, whether SRA was the developer/declarant, was expressly left for further adjudication. Likewise in the instant case, the above issue will not be addressed at this juncture, as the sole issue for this court's resolution is whether SRA is the owner of 80 condominium units.

The Master Declaration requires that an "Owner" file with the

Torrens office in order to be a record owner. However, the Master Declaration does not specifically provide that the owner may only file a deed in order to meet its definition. A fair reading of the Master Declaration in light of the above statutory discussion leads this court to believe that because SRA was the owner of the underlying land then the filing of declarations of condominium ownership and plats of survey are sufficient acts of filing for SRA to satisfy the definition of "Owner" in the Master Declaration.

Having established that SRA need not file a deed with the Torrens office in order to be considered an "Owner" as defined by the Master Declaration, we must now consider what effect the 80 Torrens certificates issued to the trustee have in the case at bar. SRA contends that each of the 80 new certificates of title issued by the Torrens office name the trustee as fee simple titleholder to the individual condominium units and that such certificates are *prima facie* evidence of title. In response, the Homeowners challenge the validity of the certificates of title on two grounds.

First, the Homeowners assert that under the Torrens system, title is to be determined from the face of the certificates without having to search the public record in order to ascertain the effect the memorials have on the state of the title. Based on this assertion, the Homeowners argue that the original certificates of title issued to the trustee in 1975, 1976 and 1978 failed on their face to evidence fee simple title to any of the 80 condominium units in question. Thus, inasmuch as title to the units was not evidenced by the three underlying certificates of title, all certificates of title issued, *i.e.*, the 80 individual certificates, subsequently thereto and based thereon are equally ineffective as evidence of unit ownership. The Homeowners' second assertion involves the application of its previous argument with regard to the requirement of registering a deed of conveyance. The Homeowners argue that both the Master Declaration and the Condominium Property Act require that a deed be registered with the Torrens office before that office may issue certificates of title. Thus, the Homeowners contend that SRA's failure to register deeds to the individual 80 units renders the issuance by the Torrens office of the 80 certificates of title improper and the certificates themselves invalid.

As applicable to the case at bar, the Torrens Act provides that certificates of title, with memorials noted thereon, and any certified copy issued by the registrar shall be *prima facie* evidence that the provisions of the law have been complied with, that such certificate of title was issued in compliance with a valid order and that title to the land is as therein stated. (Ill. Rev. Stat. 1983, ch. 30, par. 83.) Fur-

thermore, if any person is dissatisfied by the action of the registrar, such person may petition the circuit court of the county where the land is registered, and the court may make such order or judgment in the premises. Ill. Rev. Stat. 1983, ch. 30, par. 131.

■ In the instant case, the Homeowners' arguments fail both procedurally and on their merits. As noted above, if the Homeowners believe that the certificates of title were invalidly issued, then there are statutory remedies with which to pursue such a claim. The Homeowners did not utilize such measures but instead made a collateral attack on the validity of the certificates of title. The Homeowners' failure to follow the statute renders their attack on the certificates inappropriate. Thus, absent evidence to the contrary, these certificates of title, including the memorials noted thereon, are *prima facie* evidence that all provisions were complied with and that title is as stated thereon. (Ill. Rev. Stat. 1983, ch. 30, par. 83.) Accordingly, this court accepts the certificates of title as evidence of SRA's title to the 80 condominium units.

■ Assuming, for purposes of argument, that the Homeowners' claims were to be reached on their merits, this court would still find that the certificates of title were valid as *prima facie* evidence of title to the condominium units. With respect to the Homeowners' first argument, as stated earlier, the term "certificate of title" is to include all memorials noted thereon. (Ill. Rev. Stat. 1983, ch. 30, par. 79.) The three original certificates issued in the case at bar listed the trustee as holding fee simple title to three parcels of land on which three condominium buildings were to be built. The memorials of these certificates also contain the registration of the declarations of condominium ownership, the plats of survey and the 100 deeds to the units conveyed by the trustee. Therefore, based on the certificate of title, which includes the memorials noted thereon, it was possible to determine that the trustee held fee simple title to the 80 unconveyed units. The Homeowners' second argument was previously discussed and rejected by this court and therefore warrants no further attention.

Therefore, based on the foregoing discussion we reverse the trial court and remand for the trial court to enter its judgment that SRA is the owner of the 80 individual condominium units as defined by the Master Declaration. Accordingly, this action is reversed and remanded.

Reversed and remanded.

LINN and JOHNSON, JJ., concur.