FLEET MORTGAGE CORPORATION f/k/a Mortgage Associates, Inc., Plaintiff-Appellant, v. U.S. CONGLOMERATE, INC., Defendant-Appellee (Adolph Brackenridge *et al.*, Defendants).

First District (1st Division)   No. 87—0771

Opinion filed January 19, 1988.

David S. Kreisman and Kevin P. Brown, both of Shapiro & Kreisman, P.C., of Deerfield, for appellant.

Leonard Murray and Marcus R. Salone, both of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This appeal concerns the priority of liens and the interplay between the recording requirements of "An Act concerning land titles" (the Torrens Act or the Act) (Ill. Rev. Stat. 1983, ch. 30, par. 45 *et seq.*) and Federal tax lien procedure. Fleet Mortgage Corporation (Fleet) filed suit to foreclose a mortgage held on a property owned by Betty Brackenridge. U.S. Conglomerate, Inc. (Conglomerate), a party

defendant by virtue of its purchase of the property at an Internal Revenue (IRS) tax sale, was granted summary judgment based upon the trial court's determination that Conglomerate's interest in the property was superior to the mortgage held by Fleet. On appeal, Fleet raises two issues: (1) whether the failure of U.S. Conglomerate to comply with the notice and registration requirements of section 82 of the Torrens Act (Ill. Rev. Stat. 1983, ch. 30, par. 119) precludes it from obtaining title; and (2) whether the IRS notice of lien identifying the taxpayer as Betty Bradly [*sic*] was sufficient, so as to provide constructive notice of its interest in a property registered under the Torrens Act in the name of Betty Brackenridge. We reverse.

Adolph Brackenridge and Betty Brackenridge approached West America Mortgage Company (West America) to request a loan to be secured by a mortgage on property owned by Betty Brackenridge and commonly known as 7519 South Green Street, Chicago, Illinois. The loan was approved and on March 29, 1982, Adolph Brackenridge and Betty Brackenridge executed a mortgage to West America on the property, securing a note in the amount of $47,200. The mortgage was registered with the Cook County registrar of titles (registrar) as document number 3254719. On April 29, 1982, West America assigned the mortgage and note to Fleet and the assignment was registered as document number 3268503.

The property securing the note was owned by Betty Brackenridge, who had originally purchased the property with her former husband Ernest Bradley in November of 1963. Subsequent thereto, Ernest Bradley died and Betty Bradley married Adolph Brackenridge. On January 3, 1975, title to the property was transferred into the name of Betty Brackenridge by an "Affidavit by Surviving Joint Tenant," which was registered as document number 2789793.

During 1980 and 1981, Betty Brackenridge failed to pay certain business taxes, resulting in a Federal tax lien on her property. The notice of Federal lien filed by the IRS to perfect the lien identified the taxpayer as Betty Bradly [*sic*], a misspelling of Betty Brackenridge's former married name. Pursuant to 26 U.S.C. §6331 (1982), the IRS then seized the property and sold it at a public auction on September 23, 1985. Conglomerate was the high bidder at the auction with a bid of $10,000 and thus received a certificate of sale. The certificate of sale was registered on October 10, 1985, as document number 3268502.

On September 30, 1985, Fleet filed a complaint against various defendants to foreclose its note and mortgage on the property. On January 21, 1986, Fleet amended its complaint to include Conglomer-

ate. Thereafter, Conglomerate filed an answer and affirmative defense based on the interest it obtained at the tax sale and the priority of the IRS lien. Both Conglomerate and Fleet moved for summary judgment.

The trial court held in favor of Conglomerate on the basis that the misspelling of the name Bradley (Bradly) was not significant and that the notice of lien would have been discovered during a reasonable search of the tax lien register.

On appeal, Fleet contends that the Torrens Act controls all transfers of property by tax sale when the title of the property transferred is registered under the Act. Fleet's position is that the failure of Conglomerate to comply with the notice and registration requirements of section 82 of the Act precludes it from obtaining title.

Conglomerate maintains that it was not required to comply with the notice and registration requirements of the Torrens Act as the Torrens Act does not control transfers of property by IRS tax sale. Conglomerate contends that the notice and filing requirements for Federal tax liens set forth in 26 U.S.C. §6323 (1982) relieve it of any duties under section 82 as this notice gives subsequent purchasers notice of the IRS' interest. Conglomerate further argues that the statutory scheme of the Torrens Act excludes Federal tax sales.

■ The Illinois Torrens Act (Ill. Rev. Stat. 1983, ch. 30, par. 45 *et seq.*) was enacted to provide for an independent system of registration of a property's title so that a potential purchaser of land can determine, by the inspection of the certificate, the condition of the title. (*Echols v. Olsen* (1976), 63 Ill. 2d 270, 275, 347 N.E.2d 720.) To this end, the registrar is required to maintain a certificate of the title indicating the condition of the title. (*La Salle National Bank v. Triumvera Homeowners Association* (1985), 133 Ill. App. 3d 303, 306, 478 N.E.2d 1033, *appeal denied* (1985), 108 Ill. 2d 567.) Because the Act provides for both a system of land registration and remedies that were unknown at common law, the provisions of the Act must be strictly construed. *Gaffney v. County of Cook* (1987), 154 Ill. App. 3d 910, 914, 507 N.E.2d 184.

■ In the instant case, title to the property at issue was registered in the registrar's office pursuant to the Torrens Act. The transfer of property so registered, whether such title is transferred by deed, judicial proceeding, tax sale, tax or other foreclosure, the law of descent or otherwise, is controlled by the Torrens Act. *People v. Mortenson* (1949), 404 Ill. 107, 114, 88 N.E.2d 35.

When title to a property is registered under the Act, the purchase of the property at a tax sale and the subsequent issuance of a tax

deed does not in and of itself transfer title to the purchaser. In order for title to transfer to the tax deed holder, he must comply with section 82 of the Act, which provides in pertinent part:

"The holder of the certificate of sale [from a tax sale] shall within the same period [one year] send by registered or certified mail, return receipt requested, to the last known address, to each of the persons who appear by the register to have any interest in the land, a notice of the registration of such certificate of sale, and *shall present an affidavit indicating the date of notice, persons served with notice and the address of such persons to whom the notice was sent, together with a copy of said notice, to the registrar, who shall enter on the register a memorial thereof. Unless such certificate of sale is presented and registered, and notice given and affidavit registered as herein provided within the period above mentioned, the land shall be forever released from the effect of such sale,* and no deed shall be issued in pursuance of such certificate of sale." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 30, par. 119.

■ Conglomerate obtained its interest in the property in issue at a tax sale; thus, under the law of Illinois, it was required to comply with the Torrens Act in order to have title to the property transferred into its name. This it did not do.

Conglomerate has argued that the notice and filing requirements for Federal tax liens set forth in 26 U.S.C. §6323 (1982) relieve it of any duties under section 82 because this notice gives subsequent purchasers notice of the IRS' interest. Under the Federal tax statutes in issue here, however, Congress has neither proscribed any procedure for the recording of a title to property acquired through a Federal tax sale nor has it prohibited a State from imposing recording and notice requirements on a Federal tax sale purchaser.

An argument similar to U.S. Conglomerate's involving State tax lien foreclosure procedures was made and rejected in *People v. Mortenson* (1949), 404 Ill. 107, 88 N.E.2d 35. In *Mortenson*, the county clerk refused to issue a tax deed to the holder of a certificate of sale from a tax sale because he had failed to present and register his certificate of sale as required by section 82 of the Torrens Act. Finding that compliance with section 82 was a condition precedent to the issuance of the tax deed, the court stated:

"It is the contention of the appellant in this case that the procedure set forth in the Revenue Act of 1939, in regard to tax foreclosure proceedings, is a complete procedure, and that compliance with the provisions of section 82 of the Torrens Act

is unnecessary. We cannot agree with the contention of appellant in this respect. There can be no question but that the Torrens Act controls the transfer of title, whether such title is transferred by deed, judicial proceeding, tax sale, tax or other foreclosure, the law of descent, or otherwise. *In fact, there can be no question but that if appellant were to receive a tax deed, the real estate in question and the title thereto would be controlled by the provisions of the Torrens Act, and the appellant would have to comply with that act in order to secure a transfer of the title to himself.*" (Emphasis added.) (404 Ill. at 113-14.)

The court further noted:

"There is no conflict or inconsistency between the tax law and the Torrens Act. The one provides for the collection of taxes and delivery of a certificate and deed in case of sale; the other the requirements to register the land under the Torrens Act. To hold otherwise would depart from the basic purpose of the Torrens Act, that the registrar's certificate is exclusive evidence of the condition of the title." 404 Ill. at 114.

■ We are also not persuaded by Conglomerate's argument that the statutory scheme of the Torrens Act impliedly excludes Federal tax sales from the type of "tax sale" referred to in section 82 of the Act. Conglomerate concedes that the language of section 82 does not delineate the type of tax sale contemplated in the statute, and in the absence of specific exclusionary language in the statute, we will not read in such an exclusion. (See, *e.g., In re Estate of Swiecicki* (1985), 106 Ill. 2d 111, 120, 477 N.E.2d 488.) We therefore hold that the failure of Conglomerate to comply with the notice and registration requirements of section 82 of the Torrens Act releases the property from the effect of the tax sale and precludes Conglomerate from obtaining title.

Also in issue is the validity of the Federal tax lien filed by the IRS on October 21, 1981. Fleet contends that the IRS lien was not valid against it as the lien did not use the proper name of the taxpayer, Betty Brackenridge, and the lien therefore could not have been discovered during a reasonable and diligent search of the tax lien register. Conglomerate argues that Fleet had constructive notice of the lien as it was filed under the taxpayer's name of Bradly, a minor misspelling of the name Bradley which does not invalidate the lien. Conglomerate also contends that based on the Illinois system for the filing of Federal tax liens, a reasonable and diligent search of the index would have revealed the existence of the lien.

Under the Internal Revenue Code of 1954, 26 U.S.C. §1 *et seq.* (1982), a lien in favor of the United States arises on the property of any person who neglects or refuses to pay any tax after demand. (26 U.S.C. §6321 (1982).) Section 6323 of the IRC provides that the lien imposed by section 6321 shall not be valid until such time as notice thereof has been provided. Notice of the lien is provided for by filing the same as provided under the laws of the State in which the property subject to the lien is situated. If State law does not so provide, then the lien shall be filed with the office of the clerk of the United States District Court for the judicial district in which the property is situated. Authority to prescribe the form of the lien shall be set by the Secretary of the Treasury, 26 U.S.C. §6323(f)(3) (1982).

Illinois law provides that the notice shall be filed with the county recorder in a file labeled "Federal Tax Lien Notices." (Ill. Rev. Stat. 1985, ch. 82, par. 66 *et seq.*) At such time as a Federal tax lien is presented for filing, the same shall be time stamped and filed in numerical order in the file and entered alphabetically. The entry also shall show the name, residence and serial number of the taxpayer. Ill. Rev. Stat. 1985, ch. 82, par. 67.

■ In order to be legally sufficient, the lien must substantially comply with the relevant statutes and regulations. (26 U.S.C. §6323(f)(3) (1982); Ill. Rev. Stat. 1985, ch. 82, par. 66 *et seq.*; *F. P. Baugh, Inc. v. Little Lake Lumber Co.* (9th Cir. 1961), 297 F.2d 692, 695, *cert. denied* (1962), 370 U.S. 909, 8 L. Ed. 2d 404, 82 S. Ct. 1256.) Actual notice is not required, but substantial compliance requires a mortgagee be given constructive notice of the existence of the lien. *Continental Investments v. United States* (W.D. Tenn. 1953), 142 F. Supp. 542.

A Federal tax lien will be found to be invalid, even if it meets all the technical requirements of section 6323, however, if it is not discoverable upon a reasonable search of the tax lien index (26 U.S.C. §6323(f)(4) (1982)). One court has held that where a taxpayer assumes the name of her husband after a marriage and the IRS has notice of the change, the tax lien must be filed in the taxpayer's married name or it is invalid because it is not discoverable during a reasonable search of the tax lien index. *United States v. Clark* (1981), 81—1 U.S. Tax Cas. (CCH) par. 9406.

In *Clark*, the IRS filed a lien against Carolyn Clark in 1973. Clark was later divorced and in 1975 she married Roger Harper, changing her name to Carolyn Harper. Also in 1975 she acquired additional property in the name of Carolyn Harper on which Amerifirst Federal Savings and Loan Association took a mortgage in 1976. The United

States claimed priority over Amerifirst's mortgage due to the lien filed in the name of Carolyn Clark.

In finding that the United States could not rely on the lien filed in the name Carolyn Clark to obtain priority over Amerifirst's mortgage, the court stated:

> "Here, the remarriage of Carolyn Clark (of which the Internal Revenue Service received notice) resulted in a situation where there was no reasonable opportunity for a prudent person dealing with the delinquent taxpayer to ascertain the existence of a federal tax lien. A 'reasonable inspection' would not reveal the lien. Thus, the government's lien is of no effect against the subsequent mortgagee because the Notice did not comply with IRC. §6323(f)(4)." *United States v. Clark* (1981), 81—1 U.S. Tax Cas. (CCH) par. 9406.

Similarly, in the instant case, Betty Bradley married Adolph Brackenridge and assumed his surname prior to January 3, 1975. On January 3, 1975, she placed title to the property here at issue in the name of Betty Brackenridge. In addition, she executed the mortgage as Betty Brackenridge and applied for title insurance in the name Brackenridge.

Conglomerate argues that irrespective of whether the title to the Green Street property was registered in the name of Brackenridge that fact alone is insufficient to void the effect of the filing of the lien inasmuch as the lien was filed against the taxpayer, whose name was Betty G. Bradley. (Citing *Pioneer National Title Insurance Co. v. United States* (1981), 81—2 U.S. Tax Cas. (CCH) par. 9482.) This argument is not persuasive in light of the fact that the IRS had notice of Bradley's name change in 1975 and in fact used all three names in the notice of sale dated September 23, 1985. Had the IRS identified Betty Bradly [sic] in the notice of lien in the same manner that it identified her in the notice of sale (*i.e.*, using all three of the known names) the notice of lien would have been sufficient to give Fleet constructive notice of the IRS tax lien. See *Tony Thornton Auction Service, Inc. v. United States* (8th Cir. 1986), 791 F.2d 635, 639.

We also disagree with Conglomerate's contention that a reasonable and diligent search would have revealed a lien under the name of Betty Bradly [sic]. When a property is registered under the Torrens Act, a search of the name on the title certificate should be considered reasonable and diligent. This is consistent with the purpose of the Act to make the registrar's certificate the sole and exclusive evidence of title. (*Miller v. Frederick's Brewing Co.* (1950), 405 Ill. 591, 594, 92 N.E.2d 108.) Fleet used the name of the title holder,

Betty Brackenridge, in order to determine whether there were any existing liens against the property. Under the circumstances here, we believe the search was reasonable and diligent although it failed to produce the notice of lien.

For the reasons stated above, we reverse the judgment of the circuit court of Cook County.

Judgment reversed.

CAMPBELL, P.J., and BUCKLEY, J., concur.