**Steven V. DAVIS and Judith A. Davis, Plaintiffs,**

**v.**

**UNITED STATES of America Internal Revenue Service, Gillian Rongey, Defendants.**

**No. 87–3271.**

United States District Court, C.D. Illinois, Springfield Division.

Feb. 7, 1989.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Springfield, Ill., Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for plaintiffs.

James A. Lewis, Asst. U.S. Atty., Springfield, Ill., Debra L. Stefanik, Trial Atty., Tax Div., U.S. Dept. of Justice, Washing-

ton, D.C., Barbara Fritsche, Jacksonville, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

Cross motions for summary judgment.

Both must be denied.

This cause must proceed to trial.

### Facts

This case involves a mixture of the unique Illinois land holding device called a *land trust*,[1] the all-encompassing scope of the federal tax lien, and an unreported name change. Both the Plaintiffs and the Internal Revenue Service claim priority interests in real property once owned by Defendant Gillian Rongey. Between the Internal Revenue Service (hereinafter IRS) and the Davises, there can be no real winner. For now, though, we must postpone making the hard choice between these two relative innocents.

Gillian Rongey has not always been known by that name; until February of 1982, she was known as Gillian Renslow. In 1978, Gillian Renslow and her mother purchased property at 4 Chatsford Court, Bloomington, Illinois, as joint tenants. Thereafter the property was placed in an Illinois land trust, which named BancMidwest as trustee. Gillian Renslow lived there with her husband, John Renslow.

In July of 1981 the IRS made an assessment against John and Gillian Renslow for their 1978 income taxes. A notice of federal tax lien, filed in February 1982 with the

Recorder of Deeds for McLean County, Illinois, included the assessment for the 1978 taxes. The notice of tax lien named "John & Gillian Renslow" as the taxpayers, and stated that their residence was "4 Chatsford Ct., Bloomington, IL 61701."

Gillian Renslow divorced John Renslow in April of 1981 and married Richard Rongey on February 19, 1982. On April 23, 1986, title to 4 Chatsford Court was transferred from the land trust to Gillian Rongey. Later that year, on November 18, Gillian and Richard Rongey entered into a contract for the sale of 4 Chatsford Court to Steven and Judith Davis, the Plaintiffs here. Pursuant to the contract for sale, the Rongeys submitted a commitment from a title insurance company that no outstanding encumbrances, including tax liens, existed against the property. The Davises and the Rongeys consummated the contract for sale, and the Davises have apparently been making payments upon the property since.

The IRS has sought to foreclose upon 4 Chatsford Court, pursuant to its Notice of Tax Lien filed in the names of John and Gillian Renslow. In response, the Davises filed the instant case—which is a suit to quiet title—naming the United States of America, Internal Revenue Service; in the alternative, the Davises seek recovery from Gillian Rongey for false and fraudulent misrepresentations in her sale of the property to Plaintiffs.

The facts above summarized deserve to be reiterated in a context showing each

1. At the outset, some of the quirks of the Illinois Land Trust should be noted to aid the reader in understanding the background of this case. The Illinois Land Trust has been described as

> an imaginative creation of 19th and early 20th century Illinois practitioners, abetted by the Illinois courts, to develop a useful title-holding vehicle while still avoiding the impact of the Statute of Uses. From the beginning the land trust's conceptual underpinning has been that the beneficiary has neither legal nor equitable title to the real estate. Instead the beneficiary's interest is a special kind of personal property: the right to the earnings, avails and proceeds of the real estate.

*Old Orchard Bank & Trust Co. v. Rodriguez,* 654 F.Supp. 108, 110 (N.D.Ill.1987) (citations and

footnotes omitted). Other characteristics of the land trust include that the trustee holds both legal and equitable title, the trustee's only powers or duties are to follow the beneficiary's directions in dealing with the property, and the beneficiary retains full right to control, possess and manage the property. H. Kenoe, *Kenoe on Land Trusts* 1–7 (Illinois Institute for Continuing Legal Education 1981). One further critical aspect of the Illinois Land Trust, for our purposes, is that the only document filed of record is the deed showing the trustee's identity and the existence of the trust. The trust instrument itself remains unrecorded, and so the identity of the beneficiary remains undisclosed. Indeed, secrecy of ownership is one of the chief purposes for land trust use.

party's point of view. The IRS filed its tax lien, naming Gillian Renslow, in 1982. The lien was filed in good faith, and was intended to reach all of Gillian Renslow's property. At that time, though, title to 4 Chatsford Court was held in an Illinois land trust; Gillian Renslow held only a personal property interest in the property. Later the property was transferred from the Illinois land trust into Gillian Rongey's name. When Gillian Rongey sold the property to the Davises, no notice of tax lien existed which named Gillian Rongey. The notice of tax lien, in fact, was filed before the property was transferred into Gillian Rongey's name. Hence, when the title searcher looked at the record to discover any encumbrances upon the property, there was absolutely no practical way he could have discovered that the notice of tax lien filed in 1982 covered the property at 4 Chatsford Court.[2]

The perspective of the title examiner warrants further scrutiny.

Using the grantor-grantee index, the title examiner would discover that Gillian Rongey received title from the land trust. Searching the tax liens, the examiner would find none naming Gillian Rongey. Then, moving backward, the title examiner would see that the land trust received its title from the deed from Gillian Renslow and her mother back in 1978. The title examiner would discover no notice of tax lien naming the land trust or its trustee. The title examiner would perhaps discover a notice of tax lien naming Gillian Renslow, but that notice of tax lien was filed four years *after* Gillian Renslow had transferred the property into the land trust. Hence, the title examiner would find no outstanding tax liens naming any record titleholder of 4 Chatsford Court.

It is therefore clear that the IRS thought that its lien covered the subject real estate (withholding for the time being any discussion of whether the IRS had notice of Gillian Renslow's name change, and the effect such notice would have upon the IRS's notice of lien); further, the tax examiner—and hence the Davises—could find no outstanding encumbrances on the property from their record search. The only person who may have had knowledge of both the tax lien and the name change was Gillian *Renslow–Rongey*, but she denies knowing of the tax lien.

As noted at the outset, these cross motions for summary judgment are thus brought by two relatively innocent parties to this entire transaction.

*Summary Judgment Standard*

Under Fed.R.Civ.P. 56(c), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Nevertheless, the rule is also well established that the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Thus, the "preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed." *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson*, 14

---

2. Although the IRS tax lien is all-encompassing, because Gillian Renslow's interest in 4 Chatsford Court at the time the lien was filed was personal property only, the IRS's lien did not reach the real property itself, but rather only Gillian's personal property right to rents, profits and proceeds. *Old Orchard Bank & Trust Co.*, 654 F.Supp. at 112. Of course, when in 1986 title to the property was again reposed in Gillian, the IRS lien automatically encompassed the after-acquired legal and equitable interests held by Gillian—but by this time Gillian had changed her name to *Rongey*, thus making it impossible to discover that the property was encumbered by the tax lien in the name of *Renslow*.

Wall. 442, 448, 20 L.Ed. 867 (1872)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

On these facts, both the Davises and the IRS have moved for summary judgment pursuant to Fed.R.Civ.P. 56(c). The fact that cross motions for summary judgment have been filed does not *per se* entitle the Court to dispense with the determination of whether questions of material fact exist. We must give no less careful scrutiny to the facts here than we would had only one litigant moved for summary judgment. *See Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt,* 700 F.2d 341, 349 (7th Cir.), *cert. denied,* 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983). Having done so, we conclude that genuine issues of material fact remain, and hence this case must proceed to trial.

### The Applicable Law

Both motions for summary judgment turn upon the sufficiency of the IRS's notice of tax lien filed in McLean County, Illinois. The applicable sections of the Internal Revenue Code will be set out here, at the outset, for clarity's sake.

■ To begin: as soon as the IRS assesses tax liability against any person, the amount due becomes a lien in favor of the United States upon any and all property, presently or future owned, real or personal, belonging to the person assessed. 26 U.S. C. § 6321 (1982). This lien, however, is not valid against "any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor" until a notice of the lien is filed in the appropriate place. *Id.* at § 6323(a). Hence, the IRS lien does not take priority over the delinquent taxpayer's other lienors until its notice of tax lien is filed in the proper form and with the proper authority. The requirements for the notice of lien are found in § 6323(f). For real property, the notice must be filed in the place designated by the state; in Illinois, that is the county within which the real property is located, here McLean

County. The form of the notice of lien is to be determined by the Secretary of the IRS; the notice is valid regardless of any other provision of law regarding form or content of a lien notice. The Secretary of the IRS has promulgated rules pertaining to the proper form and content of the notice pursuant to § 6323(f)(3); at 26 CFR § 301.6323(f)–1(c), the notice of federal tax lien is required to be filed on a "form 668, 'notice of federal tax lien under Internal Revenue laws.'" Further, "form 668" has been defined, at § 301.6323(f)–1T(c)(2), as being a form which "must identify the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose regardless of the method used to file the notice of federal tax lien."[3]

Finally, one further portion of § 6323(f) warrants discussion, and that is subsection (4), which provides that:

> In the case of real property, if—(A) under the laws of the state in which the real property is located, a deed is not valid as against a purchaser of the property who (at the time of purchase) does not have actual notice or knowledge of the existence of such deed unless the fact of filing of such deed has been entered and recorded in a public index at the place of filing in such manner that a reasonable inspection of the index will reveal the existence of the deed, and (B) there is maintained (at the applicable office under paragraph (1)) an adequate system for the public indexing of Federal tax liens,
>
> then the notice of lien referred to in subsection (a) shall not be treated as meeting the filing requirements under paragraph (1) unless the fact of filing is entered and recorded in the index referred to in subparagraph (B) in such a manner that a reasonable inspection of the index will reveal the existence of the lien.

### The Davises' Motion

■ The Davises have seized upon § 6323(f)(4), set out above, as grounds for

---

**3.** Although this latter definition was promulgated only after the facts giving rise to this case

came about, it is still pertinent as showing the necessary elements of a notice of tax lien.

their motion for summary judgment. The Davises contend that § 6323(f)(4) requires that in any state with a "notice" type of recording statute, and where a system of indexing of federal tax liens is available, then no tax lien is valid until a reasonable inspection of the lien index will reveal the existence of the lien. The Davises contend that when a taxpayer's name changes after a notice of tax lien is filed, and where the IRS has notice of the name change, the original tax lien filing is no longer "recorded in the index ... in such a manner that a reasonable inspection of the index will reveal the existence of the lien," within the meaning of § 6323(f)(4).

This argument has several weaknesses, such as the fact that Illinois is not a "notice" jurisdiction, but rather has a recording act which has been construed as "race-notice." Ill.Rev.Stat. ch. 30, ¶ 29 (1989); *Brookfield v. Goodrich*, 32 Ill. 363 (1863); *Simmons v. Stum*, 101 Ill. 454, 456 (1882). The biggest problem, though, is that Plaintiffs totally misread § 6323(f)(4) in making their argument. Far from applying to all jurisdictions with "notice" type recording acts, subsection 4 of § 6323(f) only applies to those few jurisdictions in which the significant time for priority purposes is when a document is adequately *indexed,* as opposed to when it is adequately *filed.*[4]

The very terms of § 6323(f) make clear that the Davises' reading is erroneous. Subsection (f)(1)(A)(i) establishes that the notice of lien must be filed in the place designated under state law where real property liens are to be filed. The Davises' reading of subsection (f)(4) would make (f)(1)(A)(i) wholly redundant. Instead, subsection (f)(4) clearly, on its face, only applies to cases of real property where the state law makes indexing the time which establishes priority—the subsection only applies if, "under the laws of the state ..., a deed is not valid as against a purchaser ... who ... does not have actual notice ... of such deed unless ... the fact of filing ... has been entered and recorded in a public index ... in such a manner that a reasonable inspection of the index will reveal the existence of the deed." This clearly does not establish a federal law of indexing, but instead only applies if state law already gives supremacy to the time of indexing rather than time of filing.

The legislative history of this section also belies the Davises' reading; the Joint Committee on Taxation, in its General Explanation of the Revenue Act of 1978 (H.R. 13511, 95th Congress, P.L. 95–600) (emphasis added), noted that two conditions must first be met for this provision to apply.

> First, State law must require public indexing of a deed to be valid against a purchaser of the property who does not have actual notice or knowledge. Thus, the Federal tax lien is not to be singled out for an indexing requirement under the applicable State law *when other interests are not required to be indexed for protection against subsequent purchasers.*

Next, the appropriate state office must have an indexing system adequate to handle indexing of federal tax liens. The committee concluded that

> [w]here these conditions are satisfied, the priority of a tax lien against purchasers and other creditors *will be determined by the reference to the time of indexing rather than the time of filing the notice of tax lien.* Purchasers and creditors who acquire their interests in the property subject to a tax lien before the notice of tax lien has been indexed will be protected against a previously filed tax lien.

It is abundantly clear that § 6323(f)(4) does not apply in all "notice" jurisdictions, but rather only in those jurisdictions where priority is determined as of the time of indexing. The Davises have not argued that in Illinois indexing is the determinative time for priority. In fact, Illinois law appears to make the significant moment that of filing, not indexing. *See Village of*

---

**4.** The majority of recording acts in the United States have been construed to establish priority of a claim to real property from the moment of filing, and not the moment of proper indexing.

See O. Browder, Jr., R. Cunningham, J. Julin, and A. Smith, *Basic Property Law* at 916–17 (3d ed. 1979); R. Cunningham, W. Stoebuck and D. Whitman, *The Law of Property* at 798–99 (1984).

*Crotty v. Domm*, 338 Ill. 228, 236–37, 170 N.E. 308 (1930), where the court stated, "where an instrument is duly filed for recording, the same is deemed recorded for all legal purposes from the date of such filing.... The purpose of recording it is to render it accessible that all may know its provisions. This condition exists from the time it is filed for record." Although *Domm* referred to the filing of an ordinance with the village clerk, the language employed and reasoning underlying the decision would seem to apply to recording of real property interests as well. Hence, the Davises' argument is not well-taken.

The Davises have cited two cases to support their reading of § 6323(f)(4), *United States v. Clark*, 81–1 U.S.T.C. ¶ 9406 (S.D. Fla.1981), and *Fleet Mortgage Corp. v. U.S. Conglomerate, Inc.*, 166 Ill.App.3d 537, 519 N.E.2d 949 (1st Dist.), *appeal denied*, 122 Ill.2d 573, 125 Ill.Dec. 216, 530 N.E.2d 244 (1984). Neither case, however, persuades the Court. As Plaintiffs note, *Clark* is directly on point to the present case. There, Mrs. Clark was assessed back taxes, and a notice of tax lien was filed by the United States in 1973 listing her as Carolyn Sue Clark. In 1974 Carolyn divorced, and in 1975 she married Roger Harper and took his surname. The Internal Revenue Service received actual notice of Carolyn's remarriage and name change. Carolyn, as Carolyn Harper, acquired certain property in 1975, upon which a mortgage was taken in favor of Amerifirst Federal Savings & Loan Association as mortgagee. Hence, in *Clark* as here, the subsequent purchaser (in *Clark*, a mortgagee) gave value in reliance upon a record which did not indicate any adverse interests against the prior party. The notice of tax lien in *Clark*, as here, would not be discovered upon a reasonable inspection of the real property records because the notice was filed in the name of Clark, not Harper, whereas the property was purchased in the name of Harper and no notice of tax lien was ever filed in that name. The *Clark* case, as could be expected, concerned a dispute between the United States and Amerifirst over priority to the property; the

court held in favor of Amerifirst upon the basis of § 6323(f)(4), stating:

> The question here—whether the government is required to refile a Notice once it becomes aware of a name change—does not fit precisely within the holding of any reported decision. The language of the Internal Revenue Code, however, provides the answer. The government's filing of lien notices where there is an adequate state system of indexing real property, as there is here, must be done "in such a manner that a *reasonable inspection* of the index will reveal the existence of the lien." I.R.C. § 6323(f)(4) (emphasis added).

> Here, the remarriage of Carolyn Clark (of which the Internal Revenue Service received notice) resulted in a situation where there was no reasonable opportunity for a prudent person dealing with the delinquent taxpayer to ascertain the existence of a federal tax lien. A "reasonable inspection" would not reveal the lien. Thus, the government's lien is of no effect against the subsequent mortgagee because the Notice did not comply with I.R.C. § 6323(f)(4).

(citations omitted).

This Court declines to follow *Clark* because that case misconstrues § 6323(f)(4). *Clark* would require any and all notices of tax lien filing to be discoverable upon a reasonable inspection of the index; however, § 6323(f)(4), by its very terms, does *not* apply to all filing systems, but only those where the time of indexing is the significant time for purposes of priority. Perhaps Florida law, under which *Clark* was decided, so construes its recording act; the Illinois recording act, as above noted, does not. Therefore *Clark* is not persuasive.

The *Fleet Mortgage* case does not sway this Court, either. In the first place, to the extent *Fleet Mortgage* followed *Clark* it did so without analysis. Since this Court declines to follow *Clark*, we obviously decline to follow *Fleet Mortgage* as well. Furthermore, the *Fleet Mortgage* case turned at least in part upon the fact that the IRS knew of the taxpayer's name

change, and at times used each of the various names used by the taxpayer, but never refiled its notice of tax lien. The *Fleet Mortgage* case was thus premised in part upon failure of the IRS to provide constructive notice of the tax lien, even though it was known by the IRS that the taxpayer used several different names. *See Tony Thornton Auction Service, Inc. v. United States*, 791 F.2d 635, 639 (8th Cir.1986), cited in *Fleet Mortgage*, 519 N.E.2d at 954.

In sum, the Davises' argument does not persuade, and therefore their motion for summary judgment on the basis of § 6323(f)(4) of the Internal Revenue Code will be denied.

### The IRS's Motion

The Internal Revenue Service's argument supporting granting summary judgment in its favor is straightforward. The IRS simply posits that no section of the Internal Revenue Code requires it to refile a notice of tax lien upon learning of a name change and concludes that the failure to refile does not effect a loss of priority, even in favor of an innocent purchaser who has no way of knowing of the tax lien, and even if the IRS had actual notice and knowledge of the taxpayer's name change. The IRS has some support for its position. In *Pioneer National Title Insurance Co. v. United States*, 48 A.F.T.R.2d 81–5142 (D.N.J.1981) [1981 WL 1816], a case in some respects similar to this, the court rejected an argument that the IRS should be required to file and index federal tax liens under both the taxpayer's name and under any other name of which the IRS is aware that the taxpayer may have at one time purchased property. The *Pioneer National Title* court, noting that the Internal Revenue Code does not require any such filings, stated that "[i]f Congress had wished to impose upon the Internal Revenue Service the duty to locate a deed for every piece of real property owned by a delinquent taxpayer, determine the name under which it was acquired, and file a separate notice of tax lien for each such name, it would presumably have done so." *Id.* at 81–5145. Likewise, in *United States*

*v. Polk*, 822 F.2d 871, 872–74 (9th Cir.1987), the court approved of the *Pioneer National Title* holding, noting that "[i]f Congress had intended to impose upon the IRS the duty to investigate what property is owned by a delinquent taxpayer, record the name under which it was acquired, and file a separate notice of tax lien for each such name, it could have done so." *Id.* at 874.

Notwithstanding the broad holdings of these two cases, both are factually dissimilar to the present case and for at least that reason do not warrant blind adherence. In *Pioneer National Title* a woman purchased property in her maiden name of Imbergamo; later, she married Caruso and changed her surname accordingly. Notices of tax liens were filed after her marriage in the name of Caruso. The Carusos then sold the property, still held in the name of Imbergamo, to one Banko; the deed was signed by "Lauralie I. Caruso, formerly Lauralie Imbergamo ... and Joseph Caruso, her husband." Under such circumstances, the contention that the IRS should have filed its tax lien notice under both the names Imbergamo and Caruso is wholly meritless—a proper title search would have easily revealed the tax lien in the name of the Carusos, and since that name appeared upon the deed, Banko was in no way misled. Likewise, in *Polk* the IRS had filed a notice of tax lien against Roy Bruce Polk. Thereafter, a mortgagee lent Mr. Polk a sum of money, and took in exchange a note and a mortgage on Mr. Polk's property; Polk was known to the mortgagee, and signed the deed, mortgage and note, by the name "Bruce Polk." The mortgagee, in making his title search, looked only for the name "Bruce Polk," and therefore did not discover the IRS tax lien filed under the name of "Roy Bruce Polk." Again, the IRS had filed under the correct name, and the contention that it must also file under pseudonyms or nicknames has no merit.

Conversely, in the present case Plaintiffs allege that the IRS was aware that Renslow's name had changed to Rongey; Plaintiffs further allege that, in spite of this knowledge, the IRS did not amend its notice of tax lien to name Mrs. Rongey.

As set out earlier, under such circumstances there was no way possible by which a title examiner could have found the tax lien which covered the property at 4 Chatsford Court. Furthermore, unlike *Pioneer National Title* and *Polk*, the subsequent purchasers here had no way of knowing of Rongey's earlier name. Hence, this situation is far different from those in *Polk* or *Pioneer National Title*.

■ The IRS maintains that the Internal Revenue Code does not require refiling its notice of tax lien in situations such as this, where a delinquent taxpayer has changed his or her name following the filing of the tax lien notice, even where the IRS has actual notice of the name change. To the contrary, the Court finds that the entire statutory scheme under which the IRS is granted the duty and authority to file notices of tax liens compels a finding of a *duty* to refile under such circumstances. The *sine qua non* of § 6323 is notice to subsequent takers of the existence of the IRS lien.

The history of § 6323 reflects this with pristine clarity. Under § 6321, the federal tax lien arises upon assessment of delinquent taxes. Prior to enactment of § 6323, this "secret lien" was good as against any and all subsequent takers, regardless of the impossibility of obtaining notice of the lien. Then the forerunner to § 6323 was added; the accompanying house report indicates that the notice provision was included to accommodate business world realities. Later, the subsection was again amended to also protect bona fide pledgees and to except securities; the reason for this amendment, too, was the prior impossibility of providing notice of tax liens to subsequent purchasers. *See generally United States v. Security Trust & Savings Bank, Executor*, 340 U.S. 47, 52–53, 71 S.Ct. 111, 114–15, 95 L.Ed. 53 (1950) (Jackson, J., concurring).

Still later, in 1978, Congress again amended § 6323 by adding subsection (f)(4); the history of this section, set out above, shows that subsection (f)(4) was added to keep the federal tax lien in line with other recorded instruments in the state recording system, and once again the benchmark was the question of notice to subsequent purchasers. Under this statutory scheme, as illustrated by its history, it is clear that Congress intended the IRS notice of tax lien to serve as notice to subsequent purchasers wherever possible.

The IRS has been granted, by Congress, sole authority to decide what information to include in the notice of tax lien. The IRS has determined that the relevant information to be included is the delinquent taxpayer's name (now "identity", see 26 C.F.R. § 301.6323(f)–1T(2)), and the taxpayer's place of residence. By failing to amend the notice to provide the taxpayer's new name, the IRS has failed to comply with its own regulation by failing to provide the taxpayer's "name" or "identity" as those terms are to be construed in light of § 6323.[5]

Thus, this Court rejects the IRS's contention that there is no duty upon it under any circumstances to refile its notice of tax lien. To the contrary, this Court finds that, where the IRS has notice that a delinquent taxpayer has changed his or her name, and where the notice of tax lien was filed under the taxpayer's original name, the IRS is under an affirmative duty to refile the notice of tax lien to show the taxpayer's new name. In this way the underlying purposes of the notice provisions of the Internal Revenue Code will be furthered, while at the same time the IRS will not be under any undue administrative burden.

This holding, of course, raises several questions, as the IRS has been quick to point out. The Court, however, does not find that these questions paint such a gray

---

**5.** Assume that the IRS, in response to Congress' authorization to compose the notice of lien, had decided that the notice of lien did *not* have to include the taxpayer's name—instead, for instance, only the delinquent taxpayer's address and hair color were included. Can it be doubted that such a regulation would completely fail to achieve the Congressional intent? The reason it would fail is that such a regulation would not provide reasonable, practical notice of the taxpayer's identity, and this is so even though nowhere in § 6323 is the IRS expressly required to provide such notice.

**454**

landscape as the IRS contends. The IRS questions whether refiling would entitle it to retain priority—it seems clear that it would. Further, the IRS asks how soon after receiving "notice" of a name change would the United States be required to refile in order to maintain priority, and also wonders what would be sufficient notice of a taxpayer name change to invoke the refiling requirement. The Court recognizes that many questions remain. In answer to some of these, though, the standard will be one of reasonableness; this standard is easily applied and adopted by the courts, and easily complied with by administrative agencies. Therefore, after the IRS has received reasonable notice of a name change, it will have a reasonable amount of time within which to refile its notice of lien—the factfinder can resolve any disputes as to whether times are reasonable. Further, to the extent that the IRS is concerned that this admittedly vague standard may create administrative headaches, it should be pointed out that in the entire annals of reported tax decisions, only once has this situation before arisen—the *Clark* case discussed *supra*. It therefore appears highly unlikely that this will create any particularly onerous administrative difficulties.[6]

The IRS's motion for summary judgment is therefore denied. Nor can the Court grant summary judgment in favor of Plaintiffs upon the basis that the IRS had notice of the name change but failed to refile. For one thing, as the IRS points out, the Davises rely upon an affidavit by Mrs. Rongey stating that she informed the IRS of her name change. Obviously Mrs. Rongey stands to profit from such an assertion, and so her credibility is not closed to question. Summary judgment cannot be granted where the credibility of a witness is in issue. Furthermore, based solely upon the submissions of the Plaintiffs, the Court cannot determine that, as a matter of law, the IRS had sufficient notice to invoke a requirement to refile. Hence, this case must be tried.

*Ergo,* for the above reasons, the cross motions for summary judgment filed in this case are both DENIED, and this case shall proceed to trial.

---

6. Indeed, one possible solution may be for the IRS to amend its regulation pertaining to the content of notices of tax liens. By including taxpayer identification numbers with the information contained in the notices, and by also establishing an indexing system based upon those numbers, much of the possible administrative burden might be easily avoided.