**Steven V. DAVIS and Judith A. Davis, Plaintiffs,**

**v.**

**UNITED STATES of America, Internal Revenue Service; Gillian Rongey, Defendants.**

**No. 87–3271.**

United States District Court,
C.D. Illinois,
Springfield Division.

Dec. 27, 1989.

Matthew J. Maddox, Springfield, Ill., William Holloway, Chicago, Ill., for plaintiffs.

James A. Lewis, Asst. U.S. Atty., Springfield, Ill., Joanne C. Rutkowski, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Barbara Fritsche, Jacksonville, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

*Davis v. U.S.* revisited.

On July 15, 1987, the Internal Revenue Service issued a levy against "Gillian (Renslow) Rongey" and seized property at 4 Chatsford Court in Bloomington, Illinois. The Plaintiffs Steven and Judith Davis resided at 4 Chatsford Court at that time, pursuant to a contract for deed between them and Defendant Gillian Rongey. As a result of the IRS's actions, the Davises filed the instant suit seeking relief for wrongful levy and to quiet title; alternatively, the Davises seek relief against Gillian for breach of warranty in her sale of the premises to them.

By opinion entered February 7, 1989, we denied cross motions for summary judgment, and instead held that this cause must proceed to trial. *See Davis v. United States*, 705 F.Supp. 446 (C.D.Ill.1989). We further held that the case would be governed by the following principles:

> where the IRS has notice that a delinquent taxpayer has changed his or her name, and where the notice of tax lien was filed under the taxpayer's original name, the IRS is under an affirmative duty to refile the notice of tax lien to show the taxpayer's new name.

*Id.* at 453. We also held that

> after the IRS has received reasonable notice of a name change, it will have a reasonable amount of time within which to refile its notice of lien.

*Id.* at 454.

As noted by the Davises in their trial brief, the above principles resulted in two issues being presented for trial: whether the IRS received reasonable notice that Gillian's name had changed, and if so, whether the IRS had a reasonable time within which to refile the notice of tax lien prior to the sale of 4 Chatsford Court to the Davises.

A bench trial has been held in this case, and pursuant to the Court's leave the parties have submitted post-trial memoranda. Although post-trial briefing was to have been concluded within 37 days following trial, numerous motions for extensions of time were filed and allowed, resulting in a significant delay before the case was finally ripe.

Ripe it now is, though, and the Court has fully considered the post-trial submissions in conjunction with the evidence introduced at trial. This opinion shall constitute the Court's final ruling upon these factual issues and the legal conclusions flowing therefrom.

### FACTS

Although the factual backdrop was narrated in *Davis* I, let us recap those facts briefly here in *Davis* II.

Gillian married John (Jack) Renslow in 1972, and subsequently adopted his surname. This marriage ended in divorce on April 1, 1981, but Gillian continued using the name Renslow until February 19, 1982, when she married Richard Rongey. After this latter marriage, she changed her name on all important records, including her credit cards, her utility accounts, her bank accounts, W–2 forms filed with her employer, her nursing license, and her driver's license. She also began filing joint federal income tax returns with her new husband, Richard Rongey, beginning with the tax year 1982.

On July 20, 1981—after Gillian had divorced Jack Renslow—the IRS made an assessment against Jack and Gillian Renslow for their joint income tax liability for the 1978 tax year. The assessment resulted from business activity of Jack Renslow of which Gillian had no knowledge and no proprietary interest beyond her marital status; all of Gillian's income was correctly reported on the joint return.

At the time the assessment was made, Gillian and Jack Renslow resided at the 4 Chatsford Court premises with Gillian's elderly mother. Title to this property was held by Corn Belt Bank of Bloomington, Illinois, and later (through a bank merger) by BancMidwest, as trustee of an Illinois-type land trust dated April 7, 1978, which was known as McLean County Land Trust # 1327. As explained in our earlier order, because the title was held in the land trust, Gillian's interest in the property was personal property only—solely the right to receive rents, profits and proceeds. 705 F.Supp. at 448 n. 2. Legal and equitable title were both held by the trustee, and accordingly all documents in the property's chain of title indicated the trustee as the owner of the property. In fact, title to the property was never held in the name Renslow.

In late 1981 or early 1982, the IRS file relating to the 1981 assessment against the Renslows was assigned to Thomas McAuley, the senior revenue officer in Bloomington, Illinois. He commenced collection activity, and as part of that activity he inter-

viewed Gillian at least twice before February 9, 1982. During these meetings, McAuley learned that Jack Renslow, after the couple's divorce, had moved to Arizona. Gillian also provided McAuley with all title information pertinent to 4 Chatsford Court. Additionally, at the second of these meetings Gillian introduced her then-fiance, Richard Rongey, to McAuley, and apprised McAuley of her plans to marry Rongey.

On February 8, 1982, McAuley executed a Form 668, Notice of Federal Tax Lien Under Internal Revenue Laws, and this Notice was filed in the McLean County Recorder's Office on February 9, 1982. The Notice identified assessments for, among others, the 1978 tax year; additionally, the Notice indicated that the taxpayer's names were "John & Gillian Renslow," and that their residence was "4 Chatsford Ct., Bloomington, IL 61701." Prior to filing the Notice, McAuley had researched title to 4 Chatsford Court and verified that the property was held in a land trust and that Gillian held a personal property interest only. In fact, McAuley and his supervisor determined to forego levying against the 4 Chatsford Court property because the land trust adversely affected the marketability of the property and a levy would have required substantial litigation. Nevertheless, McAuley filed his Notice of Federal Tax Lien.

Gillian married Richard Rongey on February 19, 1982, and immediately began using his surname and correspondingly ceased using the Renslow surname. As previously noted, she changed her name on all important records, including credit card accounts, bank accounts, and licenses; she even began sending Christmas cards to McAuley using the Rongey surname. She also conversed with McAuley on many occasions, and during those talks both she and he would use the surname Rongey.

As noted, McAuley and his superior decided not to seek to collect against Gillian, and so McAuley transferred the file to Phoenix, Arizona, to commence collection against Jack Renslow. Nevertheless, McAuley remained in contact with Gillian and informed her of the progress of the collection activities in Arizona. These communications were most often initiated by Gillian, who was very interested in the progress of the collection activities and was, as McAuley stated, extremely helpful in providing information pertinent to the collection efforts. At one point McAuley assured Gillian that the IRS would never seek to collect the assessment against her, but that "nasty" letters would be sent to her just before the limitation period expired on collection.

On November 19, 1986, Gillian conveyed the 4 Chatsford Court property to the Davises by warranty deed, pursuant to a contract for deed. Prior to the sale, Gillian engaged the title company Mid–Illinois Title Services, Inc., to perform a title search on the property. The outcome of this search indicated that, among other things, no federal tax lien existed against the property. Additionally, Gillian herself had never been notified of the existence of the tax lien. Hence, the sale was consummated with the understanding of the parties that the property was free and clear of federal tax encumbrances. Gillian never informed the Davises or the title examiners, or even her own attorney, that she had previously used the surname Renslow. On the other hand, the name Renslow does not exist in the chain of title to 4 Chatsford Court anyway. Instead, the builder of the house at 4 Chatsford Court, Horizon Homes, Inc., deeded the property to Corn Belt Bank of Bloomington, Illinois, as trustee of McLean County Land Trust # 1327. The beneficiaries of this trust were Gillian and her mother, but as their interest was personal property only, their names did not appear of record. Later, on account of a bank merger, BancMidwest became the trustee, and it deeded the 4 Chatsford Court property to Gillian *Rongey* on April 23, 1986. Gillian then conveyed the premises to the Davises. In sum, nowhere in the grantor/grantee index for McLean County, Illinois, did the name Renslow appear in connection with the property at 4 Chatsford Court.

McAuley retired from the IRS in February of 1985. Neither the Davises nor Gillian learned of the existence of the tax lien

until well after the closing date. The statute of limitations on collection of the assessment in question expired on July 20, 1987. To stay the limitation period, the IRS issued a levy against "Gillian (Renslow) Rongey" on July 15, 1987, and seized the property at 4 Chatsford Court. The present litigation ensued.

## CONCLUSIONS OF LAW

We have already set out the issues to be determined based upon the evidence in this case. To reiterate, we must determine whether the IRS received reasonable notice of Gillian's name change, and if so, whether the IRS had a reasonable time within which to refile the tax lien prior to the sale of the property to the Davises. We now resolve both of these factual questions in the affirmative.

■ First, though, the IRS has requested that we reconsider our earlier ruling, and hold instead that the law does not require the refiling of a properly filed Notice of a federal tax lien when a taxpayer begins using a new name. However, we stand by our earlier ruling, and hereby reaffirm our holding that where the IRS has notice that a delinquent taxpayer has changed his or her name, and where the Notice of tax lien is filed under the taxpayer's original name, the IRS is under an affirmative duty to refile the Notice of tax lien to show the taxpayer's new name.

■ In addition, Gillian has asked this Court to reconsider our earlier denial of the Davises' motion for summary judgment based upon the cases *United States v. Clark*, 81–1 U.S.T.C.Par. 9406, 1981 WL 1790 (S.D.Fla.1981), and *Fleet Mortgage Corp. v. U.S. Conglomerate, Inc.*, 166 Ill. App.3d 537, 116 Ill.Dec. 734, 519 N.E.2d 949 (1st Dist.1988). Gillian argues that our ruling that § 6323(f)(4) of the Internal Revenue Code applies only to jurisdictions in which the significant time for priority purposes is when a document is adequately indexed, as opposed to when it is adequately filed, 705 F.Supp. at 450–52, is too narrow a reading. She asks us instead to find that § 6323 should apply here to defeat this tax lien on the basis that the tax lien was no longer "recorded in the index ... in such a manner that a reasonable inspection of the index will reveal the existence of the lien" following Gillian's name change, within the meaning of § 6323(f)(4). The Court declines the invitation to reconsider our previous ruling, though, and we hereby reaffirm our denial of the Davises' motion for summary judgment on that basis.

Having decided these preliminary issues, we may now turn to the issues identified by our earlier order. First, with respect to whether the IRS had reasonable notice of Gillian's name change, the IRS urges this Court to define "reasonable notice of a name change" to require the taxpayer to give clear and concise notice of the name change to the "proper person" within the IRS, in order to alert the IRS to the need to refile its notice. In support, the IRS argues that any notice short of such clear and concise notice being given to a designated IRS agent would invite abuse, and would result in unduly burdening the IRS administratively. Under § 6212 of the Internal Revenue Code, the IRS is required to mail statutory notices of deficiency to a taxpayer at his last known address, and courts construing this section have held that the burden is upon the taxpayer to notify the IRS of any change in address. The IRS analogizes § 6212 with the current situation, and asks that we find that the Davises failed to show that Gillian notified the IRS of her name change because she failed to inform the appropriate IRS agent with clear and concise notice of her name change. In fact, the IRS asks that we adopt an approach similar to that used by the IRS pursuant to its regulations concerning changes of address. Those regulations require that the taxpayer send written notice to either the District Director or the Service Center Director having jurisdiction over where the original notice of lien was filed, or that a subsequent or amended return of the same type of tax be filed which indicates on its face that there is a change of address. Under such a rule, the IRS argues that clearly the Davises have failed to establish that Gillian notified the IRS of her name change.

■ The IRS's proposal would eviscerate our earlier ruling. We have held that, in order to protect innocent subsequent purchasers, the IRS must refile its Notice of lien within a reasonable amount of time after receiving reasonable notice of a name change. The IRS would place the burden on the taxpayer whose name has changed to notify it of the name change, but that approach wholly ignores the fact that our rule is intended to protect subsequent purchasers. We therefore decline to adopt that strict approach, and instead hold that reasonable notice of a name change is effective when communicated to the IRS in any fashion which should reasonably lead to the information being passed on to an IRS employee with the authority, and with sufficient knowledge of the background of the case, to act upon that information.

We do not altogether discount the relevancy of certain change of address cases. As noted by Gillian in her post-trial memorandum, the change of address cases have continually noted the ease with which the IRS can cross-reference taxpayer information by means of social security numbers, and that such searches take less than a minute. *See Wallin v. Commissioner of Internal Revenue*, 744 F.2d 674, 676–78 (9th Cir.1984). The *Wallin* court also found relevant the fact that the change of address had been noted upon the taxpayer's new income tax return. In *McPartlin v. Commissioner of Internal Revenue Service*, 653 F.2d 1185 (7th Cir.1981), the court found significant several factors on the question of whether the IRS had been notified of the taxpayers' address change, including that the taxpayers had filed tax returns bearing their new address, that the IRS was aware of the new address as evidenced by its communications with the taxpayers at that new address, that the agent working on the case was aware of the address change, and finally that the taxpayers did not in any way conceal their new address.

■ We, too, find all these factors relevant to our determination that the IRS here received reasonable notice of Gillian's name change. The evidence is clear that neither Gillian nor the Davises in any way concealed the name change from the IRS. In fact, McAuley was well aware of Gillian's potential name change at the time he filed the Notice of lien on February 9, 1982, having already met Gillian's fiance, Richard Rongey. Additionally, from the start McAuley was well aware that the property was not held in the name of Renslow, but rather title was in a land trust at that time. Thereafter, McAuley became fully aware that Gillian married Richard Rongey, and that she subsequently adopted his surname. Not only was he orally notified of the name change, but he also received communication in the form of Christmas cards bearing the new name; indeed, he was well enough aware of the name change that he knew to refer to Gillian as Gillian Rongey when he contacted her. Since McAuley was the agent responsible for filing the initial Notice of lien, it is reasonable to assume that he should be the party responsible for refiling the Notice of lien once the name change became known to him.

Above and beyond notice being communicated to McAuley, Gillian also notified the IRS by means of her tax returns of her name change. As *Wallin* noted, it would have been simple for the IRS to run a computer check on Gillian, using her social security number, to discover her changed name.

Although McAuley transferred the case file to Arizona in mid–1982, he remained in contact with Gillian and took an active role in overseeing the collection activities in the case. Further, although McAuley retired in February 1985, he had ample notice of the name change subsequent to the February 9, 1982, filing of the Notice of lien within which to refile the notice prior to his retirement. Indeed, the first Christmas card with the Rongey surname was received by McAuley in December 1982, and in early 1983 the Rongeys filed their 1982 joint tax return listing the name Rongey. Ample evidence was introduced to support the conclusion that McAuley was well aware of the name change no later than late 1982 or early 1983. He therefore had until February of 1985, at his retirement, to

refile the Notice of lien stating Gillian's new surname. This he failed to do.

This Court therefore finds that the IRS had reasonable notice of Gillian's name change no later than the end of 1982 or early 1983. Further, this Court finds that the agent in charge, McAuley, had a reasonable amount of time—and therefore the IRS had a reasonable amount of time—in which to refile the Notice of tax lien before McAuley retired, and before the Davises purchased the property in late 1986.

In our earlier opinion, we stated that "[t]he only person who may have had knowledge of both the tax lien and the name change was Gillian *Renslow-Rongey,* but she denies knowing of the tax lien." 705 F.Supp. at 448. The evidence introduced during the trial clearly established that Gillian in fact had no knowledge or notice of the tax lien. It is abundantly clear that she was as innocent of wrongdoing as either of the other parties here. Indeed, we now retract that statement earlier made, because the only party shown to have had actual notice of both the name change and the tax lien was the IRS. In view of the policy considerations undergirding the Notice of tax lien provisions of the Internal Revenue Code, it is clear that the IRS should be the party to bear this loss. The whole affair could have been avoided had the IRS implemented earlier the internal policies now used by its field agents; we refer to the IR Manual, § 5355.36, pertaining to name changes, which was adopted on February 17, 1989 (just 10 days after our earlier ruling). This section provides as follows:

> (1) A taxpayer may change his/her name after a notice of lien has been filed. To avoid disputes over lien priorities in subsequently acquired assets, another lien should be filed reflecting the new name or alias.

> (2) The new lien should have the taxpayer's present name on the first name line. The second name line should indicate the previous name of the taxpayer preceded by the abbreviation "aka" for "also known as" or "fka" for "formerly known as."

The existence of this new procedure wholly defeats the IRS's claim that requiring it to file a new Notice of lien would be unduly burdensome. Had the IRS adopted these reasonable procedures several years earlier, it would have saved the Davises and Gillian, and itself, quite a lot of trouble. As for the IRS contention that a ruling against it will allow Gillian to escape her tax liabilities, two points should be made. First, if Gillian escapes her tax liabilities here, the IRS has only itself (through its agents) to blame. Following procedures calculated to provide reasonable notice of the identity of the taxpayer against whom a lien has been filed would have avoided that loss. Second, the contention is irrelevant to the issue before the Court. We are concerned here with the priorities between the Davises and the IRS; although the Davises have sued Gillian in the alternative in the event their claim for priority fails, that provides no nexus for this Court to shift the loss from the IRS to the Davises and then to Gillian on the IRS's posited "equitable" grounds. The Davises have sued Gillian for breach of warranty, but she will be liable for that only in the event we hold in favor of the IRS. As between the Davises and the IRS, which is the real relationship at issue, it is clear that the IRS has failed to perfect its Notice of lien, and therefore the Davises will take priority.

*Ergo,* it is hereby ORDERED that title to the premises at 4 Chatsford Court be QUIETED in the Davises, and that the IRS notice of tax lien involved herein be EXTINGUISHED. Further, the Court FINDS that Gillian Rongey is NOT GUILTY of any breach of warranty owed to the Davises by virtue of the IRS Notice of tax lien involved herein.

Judgment to enter accordingly.

Case CLOSED.