822 F.2d 871
 60 A.F.T.R.2d 87-5339, 87-2 USTC P 9432
 UNITED STATES of America, Plaintiff/Counter-Defendant/Appellee,
v.
Roy Bruce POLK; Darlene Polk; First Federal Savings and
Loan; Richard L. Anderson; L.J. Roberts, d/b/a
the L.J. Roberts Maricopa Turf, Inc.;
and State of Arizona, Defendants,
and
Richard L. Anderson, Defendant/Counter-Claimant/Appellant.
 No. 86-2918.
 United States Court of Appeals,
Ninth Circuit.
 Submitted June 11, 1987.*
Decided July 20, 1987.
 
 Deborah Swann Mbye, Washington, D.C., for plaintiff/counter-defendant/appellee.
 David A. Griffiths, Mesa, Ariz., for defendant/counter-claimant/appellant.
 Appeal from the United States District Court for the District of Arizona.
 Before GOODWIN, BEEZER and THOMPSON, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 Richard L. Anderson appeals from the district court's grant of summary judgment for the United States. The district court held that the IRS had a tax lien enforceable against Anderson's property. Anderson argues that the lien was improperly recorded, that it should have been discharged, and that it was wrongly given priority over his own interests. We affirm.
 
 FACTS
 
 2
 The facts were stipulated by the parties before the district court and are briefly as follows. In April 1975, appellant Richard Anderson lent $20,000.00 to Roy Bruce Polk, taking in exchange a note and a third mortgage on Polk's residential real property in Maricopa County, Arizona. Unknown to Anderson, the IRS had previously assessed a penalty of over $18,000.00 against Polk.[1] When Polk failed to pay, the IRS took action to create a tax lien against his property by filing a notice of tax lien with the Maricopa County Recorder in May, 1975.
 
 
 3
 In late 1975 or early 1976, Anderson and the two other mortgagees commenced actions to foreclose their mortgages against the Polk property. All three ordered title searches for "Bruce Polk," the name by which Polk was generally known and the name appearing on all of Polk's deeds and mortgages connected with his residence. None of the title searches revealed the IRS tax lien, which was filed under Polk's full legal name of "Roy Bruce Polk." Accordingly, the IRS was neither notified of nor made a party to the combined foreclosure proceedings, which were reduced to judgment in 1976. Following foreclosure, Anderson bought the Polk property at the sheriff's sale.
 
 
 4
 In 1979, the IRS wrote to Anderson informing him of the tax lien and threatening to foreclose if he did not pay Polk's debt. Anderson did not pay, so in 1983 the IRS commenced foreclosure proceedings in the district court, pursuant to 26 U.S.C. Sec. 7403. Anderson filed a counterclaim requesting that the court quiet title in his favor. Both parties moved for summary judgment. The district court granted summary judgment for the IRS in October, 1986, and certified it as final under Fed.R.Civ.P. 54(b). Anderson timely appealed.
 
 ANALYSIS
 
 5
 "[W]hen reviewing a grant of summary judgment, this court sits in the same position as the district court and applies the same summary judgment test that governs the district court's decision." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987).
 
 A. Validity of the Tax Lien
 
 6
 It is Anderson's contention that the tax lien which attached to Polk's property in 1975 is not valid against Anderson because the IRS did not properly file its notice of lien within the meaning of applicable federal statutes. Specifically, Anderson argues that for three reasons the notice should have been filed under the name "Bruce Polk." First, all the mortgages and deeds relating to Polk's property, all the logical starting points for a title search, listed the owner as "Bruce Polk." Second, the Maricopa County records had so many entries under the name of Polk that someone searching diligently under "Bruce Polk" would be unlikely to notice entries under "Roy Bruce Polk." Third, the IRS revenue officer assigned to collect Polk's tax assessment knew that Polk was commonly known as "Bruce" rather than "Roy." The IRS argues in response that the lien was properly filed and is enforceable against the property now owned by Anderson.
 
 
 7
 Since the federal tax lien is wholly a creature of federal statute, federal law establishes the content of a sufficient filing. United States v. Brosnan, 363 U.S. 237, 240, 80 S.Ct. 1108, 1110, 4 L.Ed.2d 1192 (1960). Questions of law are reviewed de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 8
 The proper form of filing for a tax lien is left up to the Secretary of the Treasury by 26 U.S.C. Sec. 6323(f)(3); it is defined in the regulations as Form 668, "Notice of Federal Tax Lien under Internal Revenue Laws." 26 C.F.R. Sec. 301.6323(f)-1(c). Such a form, if properly filled out and filed in the correct location, is "valid notwithstanding any other provision of law regarding the form or content of a notice of lien." 26 U.S.C. Sec. 6323(f)(3). There is no dispute in this case that the notice of lien against Polk's property was filed in the correct location. There is also no dispute that the notice of lien was filed on Form 668 and pursuant to that form listed the amount owing under Polk's full legal name.
 
 
 9
 Anderson argues that, even though the technical requirements of section 6323(f) may have been met, the lien should nevertheless be invalidated because the federal statutory scheme itself is inadequate to put a real estate purchaser on notice of a tax lien where the seller does not commonly use his full legal name. According to Anderson, a reasonable notice scheme would require the filing of a tax lien not only under the taxpayer's legal name, but also under every name in which the IRS knows the taxpayer has recorded title to property.
 
 
 10
 Anderson relies on a number of cases holding that a federal tax lien may be invalidated if the IRS misspells or otherwise materially alters a taxpayer's name in its notice of lien such that a reasonable and diligent search by the purchaser would not reveal the existence of the lien. See Haye v. United States, 461 F.Supp. 1168 (C.D.Cal.1978) ("Castello" instead of "Castillo"); Continental Investments v. United States, 142 F.Supp. 542 (W.D.Tenn.1953) ("W.R. Clark, Sr." instead of "W.B. Clark, Sr."); cf. United States v. Sirico, 247 F.Supp. 421 (S.D.N.Y.1965) (lien filing gave constructive notice, even though taxpayer's first name was shortened to an initial). In each of these cases, the IRS failed to file its notice of lien under the taxpayer's full legal name. Here, by contrast, Anderson does not argue that the IRS altered or misspelled Polk's name and thereby failed to comply with the filing statute.
 
 
 11
 We have found only two cases where a tax lien correctly filed under the taxpayer's full legal name was called in question. In United States v. Clark, 81-1 U.S.T.C. p 9406 (S.D.Fla.1981), the delinquent taxpayer was a married woman. After the IRS filed a notice of tax lien under her correct married name, she divorced and remarried. Although the IRS knew that the taxpayer changed her legal name upon remarriage, it did not file a new notice of lien under the new name. When the taxpayer sold certain real property, the purchaser searched the title only under the taxpayer's current name and so did not find the notice of tax lien. The district court, citing 26 U.S.C. Sec. 6323(f)(4) (which was added in 1978), held that the government's failure to refile its notice made it impossible for a "reasonable inspection" of the land records to reveal the lien. Accordingly, the court held the lien invalid as against the purchaser.
 
 
 12
 Clark is distinguishable from the present case on two sufficient grounds. First, it relies on statutory language in 26 U.S.C. Sec. 6323(f)(4) which was not yet enacted when the IRS filed its notice of lien on Polk's property. Second, in Clark the real estate purchaser failed to discover the notice of lien even though he searched the land records under the seller's correct legal name. Such was not the case here.
 
 
 13
 In Pioneer National Title Ins. Co. v. United States, 81-2 U.S.T.C. p 9482 (D.N.J.1981), a single woman purchased real property under her maiden name. Later she married and was assessed for unpaid taxes under her married name. She subsequently sold her property to a purchaser who searched the title under her maiden name only. When the purchaser later discovered that the IRS had filed a notice of lien under the taxpayer's married name, he sued to quiet title. The court, in a well-reasoned opinion, held in favor of the IRS:
 
 
 14
 Section 6323(f) ... clearly provides that a notice of tax lien properly filed under the name of the taxpayer is sufficient to validate the lien against all property owned by the taxpayer, under whatever name acquired.
 
 
 15
 Id. at p. 87,515.
 
 
 16
 We agree with the New Jersey district court. If Congress had intended to impose upon the IRS the duty to investigate what property is owned by a delinquent taxpayer, record the name under which it was acquired, and file a separate notice of tax lien for each such name, it could have done so. Cf. United States v. Union Central Life Ins. Co., 368 U.S. 291, 294, 82 S.Ct. 349, 351, 7 L.Ed.2d 294 (1961) (IRS has no duty to keep aware of property owned by tax delinquents). We hold that the tax lien is valid against Anderson.
 
 B. Discharge of the Tax Lien
 
 17
 Anderson argues that, even if the tax lien was once valid against him, it should have been discharged in 1976 or 1979. Section 6325(b) of 26 U.S.C. permits the IRS to issue a certificate of discharge concerning property subject to a tax lien if it determines that the lien is valueless. The parties stipulated that, in 1975-76 after the tax lien had been filed, the IRS
 
 
 18
 did not consider that there was any equity in the house out of which to satisfy the federal tax lien. Accordingly, [the IRS] did not seize the house at that time, but scheduled the file for review in 1982 in accordance with normal ... procedures.
 
 
 19
 Apparently, the IRS was waiting to see whether the property would appreciate. This lawsuit is evidence that it did.
 
 
 20
 Anderson does not explain how the IRS abused the discretion granted by the statute. We find that the IRS acted within its statutory authority when it refused to discharge the tax lien.[2]
 
 C. Priority of the Federal Lien
 
 21
 The district court ordered that the Polk property be sold and the proceeds applied to the costs of the sale, the outstanding first mortgage, the federal tax lien (up to one-half of the remaining proceeds), and Anderson, in that order. Anderson contends that, even if the federal lien survived the foreclosure judgment, it should be subordinated to his interests for two reasons: first, because Anderson once held two mortgages, both senior to the tax lien; second, because Anderson has expended substantial sums to maintain and improve the Polk property since he bought it.
 
 
 22
 Whether or not Anderson retains any legal interest in the Polk property corresponding to the two former mortgages is a matter of Arizona law. See Magneson v. C.I.R., 753 F.2d 1490, 1495 (9th Cir.1985), citing Aquilino v. United States, 363 U.S. 509, 512-13, 80 S.Ct. 1277, 1279-80, 4 L.Ed.2d 1365 (1960). According to Arizona law, a mortgagee's interest does not survive the discharge or satisfaction of the underlying debt, regardless of the mortgagee's intent. Best Fertilizers of Arizona, Inc. v. Burns, 116 Ariz. 492, 493, 570 P.2d 179, 180 (1977) (en banc). It follows that Anderson, now that his mortgage has been discharged, has no mortgagee's interest entitled to priority over the federal lien in a judicial sale.
 
 
 23
 Anderson argues that principles of equity entitle him to priority over the tax lien. Specifically, he wishes to be subrogated to the rights of the (former) mortgagees (one of which was himself) as against the government. Whether or not Anderson is entitled to subrogation is a matter of Arizona law. See Simon v. United States, 756 F.2d 696, 698 (9th Cir.1985), citing 26 U.S.C. Sec. 6323(i)(2). In Arizona,
 
 
 24
 Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt.
 
 
 25
 * * *
 
 
 26
 * * *
 
 
 27
 So when one, being himself a creditor, pays another creditor, whose claim is preferable to his, it is held that the person so paying is subrogated to the rights of the other creditor.
 
 
 28
 Mosher v. Conway, 45 Ariz. 463, 469, 46 P.2d 110, 112 (1935).
 
 
 29
 The doctrine of subrogation does not apply to Anderson's purchase of the property in satisfaction of his own third mortgage. "[T]here can be no right of subrogation when one pays a debt which he is obligated to pay." Del E. Webb Hotel Co. v. Bentley, 8 Ariz.App. 408, 412, 446 P.2d 687, 691 (1968). Nor should the doctrine be applied to preserve the priority of the second mortgage. The purpose of the doctrine is manifestly to protect a creditor's rights against the property when the creditor is forced to pay off competing creditors. The doctrine operates "in relation to the debt" which he pays off. In this case, Anderson no longer has a creditor's interest to protect; he now owns the fee interest. By the same token, he needs no subrogation to give him leverage against the debtor; the debtor (Polk) is out of the picture. Moreover, "subrogation can only be granted when an equitable result will be reached." Mosher, 45 Ariz. at 468, 46 P.2d at 112. But in this case the equities do not decisively favor Anderson, who failed to notify the United States of his foreclosure.
 
 
 30
 Anderson relies on Pipola v. Chicco, 274 F.2d 909 (2d Cir.1960). In Pipola, a senior mortgage (A) on real property was paid off by the purchaser with borrowed funds secured by a new mortgage (B). In the meantime, a tax lien had been filed on the property, junior to A but senior to B. When the government sued to enforce the tax lien, the parties agreed that the new mortgagee should be paid ahead of the government.
 
 
 31
 It is unlikely that a similar result would be reached today without agreement of the parties. In 1966, Congress added section 7425 to the tax code, describing in narrow terms the circumstances in which a federal tax lien can be extinguished without the government's consent. The effect of this provision was considered in Southern Bank v. IRS, 770 F.2d 1001 (11th Cir.1985), cert. denied sub nom. Mid-State Homes, Inc. v. United States, --- U.S. ----, 106 S.Ct. 2890, 90 L.Ed.2d 977 (1986), a case factually similar to this one. The court concluded that:
 
 
 32
 the failure of the mortgagees to comply with the notice provisions of 26 U.S.C. Sec. 7425 before they conducted the foreclosure sales and purchased the property, caused their mortgage liens to be extinguished and the federal liens to be elevated from their junior status.
 
 
 33
 Id. at 1009. The court added, "Equitable principles do not persuade us to reach a contrary conclusion for the harsh results now imposed could have easily been avoided by [the foreclosing mortgagees]." Id. We agree with the reasoning of the Eleventh Circuit.
 
 
 34
 Finally, Anderson claims reimbursement for his "maintenance" and "improvement" expenses before the government takes anything. The IRS disputes whether all of the claimed expenses were really for maintenance. This court has indicated that maintenance expenses incurred by a senior lienholder can be given priority over a tax lien. See Little v. United States, 704 F.2d 1100, 1108 (9th Cir.1983) ("Little I "); cf. Little v. United States, 794 F.2d 484 (9th Cir.1986) ("Little II "). Both Little I and Little II involved a government redemption of property after a non-judicial foreclosure sale. Accordingly, 26 U.S.C. Sec. 7425(d) applied to that case, while it does not apply to the present case. Section 7425(d) incorporates by reference 28 U.S.C. Sec. 2410(d), which provides explicitly for payment by the government (as redemptioner) for maintenance and improvements. Again, that statute is not applicable in the present case, nor has Anderson suggested another basis for his claims to compensation, other than general principles of equity. We reject this claim.
 
 
 35
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 The parties agree, for purposes of this litigation, that the IRS has a valid assessment against Polk. Indeed, Anderson cannot challenge the assessment in a quiet title action. See Zimmer v. Connett, 640 F.2d 208, 210 (9th Cir.1981) (citing with approval Falik v. United States, 343 F.2d 38 (2d Cir.1965))
 
 
 [2]
 When Congress wishes to impose a duty on the IRS to discharge a lien, it knows how to do so. See 26 U.S.C. Sec. 6325(a) (1982)