**E.J. FRIEDMAN COMPANY, INC., Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 92–55572.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 1993.

Decided Sept. 29, 1993.

William W. Holcomb and Robert H. Horn, Tyre, Kamins, Katz & Granof, Los Angeles, CA, for plaintiff-appellant.

Sally J. Schornstheimer and Gary R. Allen, U.S. Dept. of Justice, Washington, DC, for defendant-appellee.

Before: NORRIS, WIGGINS, O'SCANNLAIN, Circuit Judges.

WIGGINS, Circuit Judge:

### OVERVIEW

E.J. Friedman Company, Inc. ("Friedman")[1] brought an action in district court to compel the United States to discharge a federal tax lien encumbering several parcels of property. Friedman advanced several theories to support its request for relief. The district court dismissed all of Friedman's claims. Friedman appeals, and we affirm.

### FACTS AND PRIOR PROCEEDINGS

Berkshire Dallas, Inc. ("Berkshire") purchased a parcel of property on which it planned to build 56 homes in two phases. Sterling Savings and Loan Association ("Sterling") made two loans to Berkshire, one in the amount of $695,000 ("Land Loan"), which partially financed Berkshire's purchase of the property, and another in the amount of $2,083,000 ("Construction Loan"), which was to finance construction of the first twenty-six homes in the project. The loans were secured by first and second deeds of trust on the property.

Friedman also made two loans to Berkshire. The first, in the amount of $470,000, was for purchase of the property. Later, Friedman loaned Berkshire an additional $200,000. Both loans were secured by deeds of trust on the property, which were subordinate to Sterling's deeds of trust.

Subsequent to the recording of all the trust deeds, the IRS recorded a federal tax lien against the real property owned by Berkshire, including all the property at issue here. On the date the tax lien was recorded, Berkshire was in default on all of the loans, and numerous mechanics' liens and stop notice claims had been filed against Berkshire's development property. After the tax lien was recorded, Sterling informed Friedman that it intended to foreclose on the property, eliminating all junior interests including Friedman's. To this point, fourteen homes had been completed and sold. The remaining twelve homes were either in escrow or subject to binding contracts of sale pending the completion of construction.

In an effort to avoid having its interest in the property foreclosed, Friedman began negotiating a workout agreement with Sterling. Friedman contacted an IRS agent to discuss the possibility of securing a release of the tax lien under 26 U.S.C. § 6325 on the ground that the Berkshire had no equity in the prop-

---

1. Friedman is the successor in interest by merger to Frieburke, Inc., the actual entity involved in the subject transactions. To avoid confusion, we refer to Frieburke, Inc. as Friedman.

erty. Based on the conversation with the agent, Friedman determined that it would not seek a release of the tax lien at that time because it would take too long. Instead, Friedman, Sterling, and Ticor Title Insurance Co. ("Ticor") agreed to the following workout arrangement.

Friedman convinced Sterling and Ticor to proceed with sales of the remaining twelve homes. Ticor would insure over the tax liens and not show the lien as an exception on the title policies. Proceeds of the sales would go to Sterling to pay down its senior loans. After the homes were sold, Friedman would purchase the rest of Sterling's loans. Friedman agreed to indemnify Ticor and Sterling against the tax lien. Eleven of the homes were sold pursuant to this agreement. Berkshire sold the other home for cash outside of escrow and misappropriated the funds.

Following the home sales, Friedman purchased Sterling's Land Loan, which was secured by the unbuilt portion of the development and the house that was sold by Berkshire. Friedman and Sterling released their trust deeds on the eleven homes sold under the workout agreement. Friedman foreclosed on the unbuilt portion of the development, and the IRS declined to exercise its rights of redemption. Friedman still retains the Land Loan deeds of trust, which encumber the lot and house improperly sold by Berkshire.

Subsequently, Friedman applied for a discharge of the tax lien. The IRS refused to release the lien, and Friedman filed this action. Friedman seeks a discharge of the tax lien encumbering the eleven homes sold under the workout agreement and the home sold by Berkshire.

## STANDARDS OF REVIEW

■ "Whether the United States waived its sovereign immunity is a question of law reviewed de novo." *Arford v. United States*, 934 F.2d 229, 231 (9th Cir.1991) (emphasis deleted). Waivers of sovereign immunity must be strictly construed in favor of the government. *See Campbell v. United States*, 835 F.2d 193, 195 (9th Cir.1987). Interpretation of a statute also presents a question of law reviewed de novo. *See Home Sav. Bank v. Gillam*, 952 F.2d 1152, 1156 (9th Cir.1991).

## DISCUSSION

First, we must determine whether the United States has waived its sovereign immunity to this action. This court has stated that "[i]n an action against the United States, in addition to statutory authority granting subject matter jurisdiction, there must be a waiver of sovereign immunity." *Arford*, 934 F.2d at 231. While, 28 U.S.C. § 1340 provides statutory authority for subject matter jurisdiction over Friedman's claims, *see Arford*, 934 F.2d at 231, Friedman must still clear the second jurisdictional hurdle by pointing to a waiver of sovereign immunity before we can conclude that the district court had subject matter jurisdiction. *See id.; Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir.1985).

Friedman argues that 28 U.S.C. § 2410, 28 U.S.C. § 2201, and 5 U.S.C. § 702 waive sovereign immunity in this case. We disagree.

## I.

First, Friedman argues that it can bring this action under 28 U.S.C. § 2410. Section 2410 provides that "the United States may be named a party in any civil action or suit in any district court ... to quiet title to ... real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410 (1993). On its face, it would appear that this statute permits Friedman to bring this claim for relief. The government contends, however, that Friedman does not have a sufficient interest in the property to bring this action. Moreover, there is some question as to whether this kind of action is cognizable under § 2410.

■ In *Shaw v. United States*, 331 F.2d 493 (9th Cir.1964), this court dismissed an action to quiet title brought by the wife of a taxpayer against whom the IRS had filed a notice of tax lien. The court indicated that because the wife's complaint showed no invasion of any property interest of her own, she had failed to state a claim under § 2410. *Id.* at 496–98. Thus, *Shaw* indicates that a party must have some "property interest of [its]

own" to be able to bring a quiet title action under § 2410.

■ Friedman argues that its interest in the various properties is sufficient. We agree in part and disagree in part. Under the stipulated facts, Friedman still holds a trust deed on the lot and home Berkshire sold for cash. Thus, Friedman has an interest of its own in this property that would permit it to bring an action to quiet title. Friedman also seeks to quiet title to the eleven homes sold under the workout agreement. However, Friedman has "no property interest of [its] own" in these properties. Accordingly, § 2410 does not permit Friedman to bring an action to quiet title to the homes sold under the workout agreement. *See id.; see also Raulerson v. United States,* 786 F.2d 1090, 1091 (11th Cir.1986) (indicating that an action to quiet title under § 2410 cannot be brought by a party that has forfeited its rights in the property); *Commonwealth Land Title Ins. Co. v. United States,* 759 F.Supp. 87, 92–94 (D.Conn.1991) (indicating that a title company did not have a sufficient interest in property it insured to bring a § 2410 action).

■ Notwithstanding the fact that Friedman's interest in the home Berkshire sold for cash is probably sufficient to support an action under § 2410, we conclude that Friedman's action is not cognizable under that section. This court has stated that § 2410 permits "quiet title actions challenging the procedural aspects of tax liens, but not the merits of the underlying tax assessments." *Arford,* 934 F.2d at 232. Here, Friedman's claim is not easily classified as either. Friedman does not argue that any procedural violations occurred in connection with this lien. On the other hand, he does not challenge the merits of the assessment underlying the lien either. What he seeks is a declaration that the property is not encumbered by the tax lien because the lien is worthless. We con-

clude that such a claim simply does not fall within the scope of § 2410.

■ This court has indicated that § 2410 permits only claims that are procedural. *See Elias v. Connett,* 908 F.2d 521, 527 (9th Cir.1990) (stating that a "taxpayer may only contest the procedural validity of a tax lien" under § 2410; *see also Johnson v. United States,* 990 F.2d 41, 43 (2nd Cir.1993) (indicating that Johnson's claim could be maintained under § 2410 because it was procedural in nature). Moreover, the IRS has specifically provided a procedure for discharging a lien when the interest of the United States is valueless. *See* 26 U.S.C. § 6325(b)(2)(B) (1993). Section 6325 permits the Secretary to release tax liens that are valueless. However, the section leaves the determination to the discretion of the Secretary. *See United States v. Polk,* 822 F.2d 871, 874 (9th Cir. 1987). To permit a party to discharge a "valueless" lien in a quiet title action under § 2410 would be contrary to the provisions of § 6325(b)(2)(B) and would rob the Secretary of the discretion granted him by Congress. *Cf. Polk,* 822 F.2d at 874. Accordingly, we conclude that this action is not cognizable under § 2410 and therefore that § 2410 does not serve as a waiver of immunity in this case.[2] *See Elias,* 908 F.2d at 528 ("Because Elias failed to state a 28 U.S.C. § 2410(a) cause of action, the United States did not waive its sovereign immunity to suit.").

## II.

■ We also reject Friedman's argument that 28 U.S.C. § 2201 waives the sovereign immunity of the United States to this action. Friedman seeks a declaratory judgment with respect to the interests that exist in the property subject to the federal tax lien. While § 2201 grants jurisdiction to the district court over cases seeking declaratory relief, a "specific exception exists ... for

---

**2.** We point out that this is not a case in which a taxpayer seeks to compel the IRS to release a lien after complying with the provisions of 26 U.S.C. § 6325(a) and 26 C.F.R. § 301.6325–1(a). As discussed below, that section does not apply in this matter. *See supra* note 3. Were this an action brought by a taxpayer that had complied with the provisions of § 6325(a) and the regula-

tions promulgated thereunder, the taxpayer may be able to compel the IRS to discharge the lien under 28 U.S.C. §§ 1361 or 2410, *see Overton v. United States,* 925 F.2d 1282, 1285 & n. 1 (10th Cir.1991), or bring an action for damages under 26 U.S.C. § 7432. *See McMillen v. United States,* 960 F.2d 187, 190 (1st Cir.1991).

disputes 'with respect to Federal taxes.'" *Hughes v. United States,* 953 F.2d 531, 536–37 (9th Cir.1992) (quoting 28 U.S.C. § 2201 (1993)). Because the case at bar involves federal taxes, declaratory relief is unavailable, and § 2201 cannot serve as a waiver of sovereign immunity. · *Id.*

### III.

 Finally, Friedman argues that the Secretary's refusal to discharge the lien under 26 U.S.C. § 6325(b) is reviewable under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 ("APA").[3] This question has not been addressed directly by this court or any other circuit.[4] We conclude that the IRS's refusal to discharge the lien under § 6325(b) is not reviewable under the APA.

Under the APA a party " 'adversely affected or aggrieved' by agency action" can obtain judicial review thereof, "so long as the decision challenged represents a 'final agency action for which there is no other adequate remedy in a court.'" *Webster v. Doe,* 486 U.S. 592, 599, 108 S.Ct. 2047, 2051, 100 L.Ed.2d 632 (1988) (quoting 5 U.S.C. §§ 702 & 704 (1988)). The standards to be applied on review are outlined in § 706 of the APA. Section 701(a)(2), however, indicates that the APA does not apply to agency actions committed to agency ·discretion by law. Indeed, the Supreme Court has indicated that the § 701(a) hurdle must be cleared "before any review at all may be had" under the APA. *Heckler v. Chaney,* 470 U.S. 821, 828, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714.(1985).

In *Heckler,* the Supreme Court indicated that review cannot be had if a statute commits agency action to agency discretion and "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." 470 U.S. at 830, 105 S.Ct. at 1655; *see also* 5 U.S.C. § 701(a)(2) (1993); *County of Esmeralda v. United States,* 925 F.2d 1216, 1218 (9th Cir.1991). Here, the statutes and regulations provide that the IRS may, in its discretion, issue a certificate of discharge if it determines that the interest of the United States in the property to be discharged has no value. *See* 26 U.S.C. § 6325(b); 26 C.F.R. § 301.6325–1(b)(2) (1993). While § 701(a)(2) is a narrow exception, *see Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971), we cannot escape the conclusion that the decision to discharge a lien under § 6325(b) falls squarely within its scope. The section commits the decision to discharge a lien to agency discretion, *see Polk,* 822 F.2d at 874 (indicating that the IRS did not abuse the discretion granted it by the statute); *see also Adams v. FAA,* 1 F.3d 955, 956–57 (9th Cir.1993) (per curiam), and. the statute is drawn such that there is no standard against which to judge the IRS's exercise of discretion. Accordingly, we hold that a refusal to discharge a lien under § 6325(b) is not reviewable under the APA. Thus, the APA also does not serve as a waiver of sovereign immunity here. Without a valid waiver of sovereign immunity, the district court did not have subject matter

3. Friedman also argues that the IRS should have discharged the lien under the mandatory provisions of § 6325(a). However, we need not decide whether refusal to discharge a lien under § 6325(a) is reviewable under the APA because § 6325(a) clearly does not apply to Friedman's request for a discharge of the lien.

Section 6325(a) requires the IRS to release a lien if "the liability for the amount assessed … has been fully satisfied or has become legally unenforceable." The regulations promulgated pursuant to the specific authority in the statute indicate that the entire liability must have been satisfied or become "unenforceable as a matter of law (not merely uncollectible or unenforceable as a matter of fact)." 26 C.F.R. § 310.6325–1(a)(1) (1993). Here, Friedman does not claim that the liability has become legally unenforcea-

ble; he maintains that the lien is valueless or "merely uncollectible or unenforceable as a matter of fact." Thus, Friedman's claim is not governed by the mandatory provisions of § 6325(a), and Friedman can claim no relief under that section.

4. The only reported cases even remotely to address this question are *Polk* and *Simon v. United States,* 756 F.2d 696, 699 (9th Cir.1985). In both cases, this court failed to discuss whether the IRS's refusal to discharge a lien was reviewable under the APA, but instead indicated that particular refusals to discharge liens under § 6325 were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Simon,* 756 F.2d at 699 (quoting 5 U.S.C. § 706(2)(A) (1976)); *see also Polk,* 822 F.2d at 874.

jurisdiction over this matter. *See Gilbert,* 756 F.2d at 1458–59.

**AFFIRMED.**