In re **CRYSTAL CASCADES CIVIL, LLC,** Debtor,

**United States of America,** Appellant,

v.

**Richard H. Buenting; Road & Highway Builders, LLC,** Appellees.

BAP No. NV–08–1314–JuHMo.
Bankruptcy No. 05–20550.
Adv. No. 06–01082.

United States Bankruptcy
Appellate Panel
of the Ninth Circuit.

Argued and Submitted on May 19, 2009.

June 18, 2009.

James D. Greene, Rice Silbey Reuther & Sullivan, Callister & Reynolds, Rice Silbey Reuther & Sullivan, LLP, Aubree Cherney, Las Vegas, NV for Debtor.

Michael Lehners, Christopher P. Burke, for Appellee.

Steven Myhre, Karen L. Pound, for Appellant.

Before: JURY, HOLLOWELL, and MONTALI, Bankruptcy Judges.

## MEMORANDUM

MEREDITH A. JURY, Bankruptcy Judge.

Appellees Richard H. Buenting ("Buenting") and Road & Highway Builders, LLC,

("Road & Highway")(collectively, "Appellees") filed an adversary complaint against appellant United States of America ("IRS") seeking a judicial declaration that their later-in-time recorded liens against Crystal Cascades Civil, LLC's real property were superior to the IRS's two notices of federal tax lien (variously, "NFTLs" and "liens") recorded against the same property.[1]

The validity of the IRS's tax liens against Appellees is governed by 26 U.S.C. § 6323(f).[2] The statute requires the IRS to record its tax lien in a manner that allows third parties to discover the lien through a reasonable inspection of the public index of deeds. IRC § 6323(f)(4)(A).

Here, the NFTLs identified the taxpayer as "Crystal Cascades, LLC, a corporation" instead of "Crystal Cascades Civil, LLC", which was debtor's name registered with the Nevada Secretary of State. Therefore, Appellees contended the tax liens were outside the chain of title and could not be discovered by a reasonable inspection of the public index of real property records in Clark County, Nevada where the property was located.

After a trial, the bankruptcy court issued its ruling in a written opinion entered on November 12, 2008, which was amended on December 3, 2008 and published as *Buenting v. Crystal Cascades Civil, LLC*

*(In re Crystal Cascades Civil, LLC)*, 398 B.R. 23 (Bankr.D.Nev.2008). The bankruptcy court held that a search of the real property records in Clark County, Nevada using debtor's exact legal name constituted a reasonable inspection within the meaning of IRC § 6323(f)(4)(A). In so deciding, the court concluded that the standard for a reasonable inspection under the statute should be tested against how a nonprofessional person[3] would search the public records index, which would be an exact name search. *Crystal Cascades Civil, LLC*, 398 B.R. at 34. The court also considered the nature of the public index and search methods that were available in Clark County, Nevada. *Id.* at 36–37. Because an exact-name search would not have revealed the tax liens, the court awarded Appellees $321,000 in surplus proceeds that remained after the foreclosure sale of debtor's property.

The IRS timely filed this appeal, contending that the bankruptcy court applied the incorrect legal standard when making its ruling on what constituted a reasonable inspection under the circumstances here.

There is no precise legal standard for what constitutes a reasonable inspection under all circumstances. We hold that what constitutes a reasonable inspection within the meaning of IRC § 6323(f)(4)(A) is properly analyzed from the perspective

---

1. The IRS recorded its tax liens on August 11, 2004 and January 28, 2005, as a result of debtor's failure to pay its employment taxes for the last two quarters of 2003 and the first two quarters of 2004, respectively. Buenting recorded a deed of trust which secured a $125,256 note on February 4, 2005. Road & Highway recorded a deed of trust which secured a $455,000 note on the same date. It recorded a corrected deed of trust for this loan on February 8, 2005. This corrected deed of trust also secured a $3,174,960.13 debt owed under an indemnification agreement executed by debtor's principals.

2. Hereinafter citations to the Internal Revenue Code, 26 U.S.C. § 1 et seq. are referred to as "IRC".

3. The court uses the terminology "average nonprofessional" or "nonprofessional searcher" in its written opinion. At times in trial, reference was made to the "person off the street." Other times reference was made to the "average user". We use the term "ordinary prudent person" as synonymous with "nonprofessional", "person off the street" or "average user".

of an ordinary prudent person and will vary by locality. This was the approach followed by the bankruptcy court.

Accordingly, for the reasons more fully explained below, WE AFFIRM.

## I. FACTS

The initial Articles of Organization filed with the Nevada Secretary of State on November 20, 2000 reflected debtor's legal name as "Crystal Cascades, LLC". Debtor also used this name to obtain an Employment Identification Number ("EIN") from the IRS.

On May 31, 2001, amended Articles of Organization changed debtor's name from Crystal Cascades, LLC to Crystal Cascades Civil, LLC. Crystal Cascades, LLC transferred the real property at issue in this appeal to Crystal Cascades Civil, LLC at some time after this May 31, 2001 name change. Debtor did not provide the IRS with a formal notice of the name change. But it used both its old name and new name on its tax returns that led to the IRS's tax liens at issue in this appeal.

Debtor filed its chapter 11 petition on September 28, 2005. On January 30, 2006 the bankruptcy court entered a stipulation and order vacating the automatic stay with respect to the real property at issue in this appeal in favor of Business Bank of Nevada ("Business Bank"). Business Bank held the first and second deeds of trust on the property, the underlying notes were in default and the bank sought to complete its foreclosure sale. Debtor entered into the stipulation with Business Bank after concluding that the property's value was less than the amount of liens encumbering it.

Appellees did not receive notice of the stipulation, but they discovered it on February 6, 2006, during a routine search of the docket. Due to their lack of notice, Appellees filed their adversary complaint [4] on February 21, 2006, seeking to reimpose the automatic stay and to obtain a judicial declaration regarding the priority of their liens over the government's tax liens. In conjunction with filing the complaint, Appellees moved for a preliminary injunction against the pending foreclosure sale. At the February 27, 2006 hearing on this motion, the court denied the relief, authorized the foreclosure sale to go forward on February 28, 2006, and ordered that any excess proceeds be deposited in an interest-bearing account pending resolution of Appellees' adversary proceeding.[5]

Stewart Title Company ("Stewart Title") conducted the nonjudicial foreclosure sale on Business Bank's behalf. The title officer responsible for conducting the sale performed a title search that determined who would receive notice of the foreclosure sale. The title officer did not find the NFTLs. Consequently, the IRS did not receive notice of the sale.

Road & Highway purchased the property at the foreclosure sale for $1.5 million.[6]

---

4. Appellees also named Debtor, Business Bank and the Gore Family Trust ("Gore") as defendants.

5. Because the priority of Business Bank's lien was uncontested, it was permitted to keep the portion of the foreclosure proceeds which satisfied its debt and was thereafter dismissed from the proceeding on March 3, 2006. Appellees entered into a settlement agreement with Gore on October 18, 2007, which provided that Appellees would pay one third of all amounts recovered to Gore, up to a maximum of $100,000. In return, Gore agreed to dismiss, with prejudice, its counterclaim against Appellees. Appellees dismissed Gore from the adversary proceeding on November 1, 2007.

6. Buenting owned 50% of Road & Highway Builders, LLC. Fisher Sand and Gravel Corporation, a North Dakota C Corporation owned the other 50%.

Thereafter, the IRS notified Road & Highway that it was exercising its statutory right of redemption under IRC § 7425. Appellees negotiated a release of the IRS's claim to a right of redemption in exchange for $100,000.[7] The trial regarding the priority of the IRS's NFTLs over Appellees' liens occurred in November 2007. The bankruptcy court ruled against the IRS and in favor of Appellees. The IRS timely filed this appeal.

## II. JURISDICTION

■ The bankruptcy court had jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2)(K) and (O). We have jurisdiction under 28 U.S.C. § 158.[8]

## III. ISSUE

Whether the bankruptcy court applied the correct legal standard in reaching its decision that a reasonable inspection of the relevant property records in Clark County, Nevada would not have revealed the tax liens.

## IV. STANDARD OF REVIEW

■ Whether a reasonable inspection of the relevant property records within the

meaning of IRC § 6323(f)(4)(A) would have revealed the IRS's NFTLs is a mixed question of law and fact that we review de novo. *TKB Int'l, Inc. v. United States*, 995 F.2d 1460, 1465 (9th Cir.1993)(*citing Kivel v. United States*, 878 F.2d 301, 304 (9th Cir.1989)). Because our review is de novo, we consider whether a reasonable inspection of the public index occurred as if no decision had been rendered by the bankruptcy court. *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir.1988).

## V. DISCUSSION

■ The priority of a federal tax lien is governed by federal law. *United States v. Equitable Life Assurance Soc'y*, 384 U.S. 323, 328, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966). When a taxpayer neglects or refuses to pay a tax liability after assessment, notice, and demand, the amount due becomes "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." IRC § 6321.

■ Once the IRS files a proper notice of a tax lien, the lien is valid against a subsequent purchaser of the property, provided that the purchaser is given notice of the encumbrance. IRC § 6323(a).[9] The

---

**7.** Appellees asserted for the first time in their October 18, 2007, trial brief that the IRS's election to redeem the property operated to extinguish its liens. The court addressed this issue in its final ruling, finding that a precondition of the IRS's right of redemption was the proper filing of the tax liens. Because the court found the tax liens were not properly filed and ineffective against third parties, the court concluded that the IRS had no legal right of redemption which arose when the property was foreclosed upon. The court further held that if the tax liens were valid, the IRS's acceptance of $100,000 was not itself a redemption and, therefore, was not an election of remedies. Thus, the court concluded that the IRS was not estopped from asserting a claim to the surplus proceeds. *Crystal Cascades Civil, LLC*, 398 B.R. at 37–38. Since

the court's ruling on the election of remedies issue does not depend upon whether the NFTLs were valid against third parties, we need not address these issues to reach our determination.

**8.** When Appellees filed the adversary proceeding, the estate owned the real property. Subject matter jurisdiction is determined as of the date the complaint is filed. *Fietz v. Great W. Sav. (In re Fietz)*, 852 F.2d 455, 457 n. 2 (9th Cir.1988).

**9.** This subsection provides:

Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors.—The lien imposed by section 6321 shall not be valid as against any purchaser,

filing requirements for the notice are set forth in IRC § 6323(f).[10] The notice itself must be on Form 668 and its contents are dictated by the Secretary of the Treasury. IRC § 6323(f)(3). Treasury Regulation ("Treas.Reg.") § 301.6323(f)–1(d)(2) requires that the NFTL "must identify the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose...."

■ With respect to real property, the notice requirement under the statute requires proper filing of the tax lien under the laws of the state "in which the property subject to the lien is situated." IRC § 6323(f)(1)(A)(i). Where, as here, the property is situated in a state that invalidates a deed against a bona fide purchaser unless the filing of that deed has been recorded, the NFTL "shall not be treated as meeting the ... requirements" with respect to such a purchaser "unless the fact of filing [the tax lien] is entered and recorded in [an] index ... in such a manner that a reasonable inspection of the index will reveal the existence of the lien."[11] IRC § 6323(f)(4)(A).

IRC § 6323(f)(4)(A) thus defines the rights of the subsequent purchaser of real property vis-a-vis the IRS's NFTLs and fixes a standard by which such rights are to be measured. However, there is no precise legal test for determining what constitutes a "reasonable inspection" within the meaning of the statute. The term is defined neither in the statute nor in the regulations. Central to this case, therefore, is the interpretation of the word "reasonable".

The IRS's various assignments of error in this appeal demonstrate that the word "reasonable" raises numerous questions which we must address: Should the reasonableness of an inspection of the public records be tested against the conduct of an ordinary prudent person? Or, as the IRS argues, should reasonableness be tested against the type of search conducted by a professional title officer? Should the reasonableness of the search depend at all on local idiosyncrasies with respect to the organization of the public index and electronic search methods available? Or, as the IRS argues, does consideration of local

---

holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

**10.** Subsection (f) titled "Place for filing notice; form" provides in relevant part:

(1) Place for filing.—The notice referred to in subsection (a) shall be filed—(A) Under State laws.—(i) Real property.—In the case of real property, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated; .... (3) Form.—The form and content of the notice referred to in subsection (a) shall be prescribed by the Secretary. Such notice shall be valid notwithstanding any other provision of law regarding the form or content of a notice of lien. (4) Indexing required with respect to

certain real property.—In the case of real property, if—(A) under the laws of the State in which the real property is located, a deed is not valid as against a purchaser of the property who (at the time of purchase) does not have actual notice or knowledge of the existence of such deed unless the fact of filing of such deed has been entered and recorded in a public index at the place of filing in such a manner that a reasonable inspection of the index will reveal the existence of the deed....

**11.** Under Nevada law, a subsequent purchaser without notice of a prior interest takes free and clear of that interest. Nev.Rev.Stat. § 111.320. Clark County maintains grantor-grantee indices pursuant to Nev.Rev.Stat. § 247.190.1. The indexing is supplemented by an Internet-based search engine that allows searching by entity name. *See* Nev.Rev.Stat. § 247.150.9(b).

practice impose too strict a burden on the IRS?

Additionally, should a subsequent purchaser who has reason to know that an encumbrance exists be held to inquiry notice to search the grantor/grantee index not only under the name of the record owner, but also under other names the record owner might possibly have used? The final question for our consideration is whether it is necessary for us to reconcile the bankruptcy court's holding that an exact-name search constitutes a reasonable inspection under IRC § 6323(f)(4)(A) with Treas. Reg. § 301. 6323(f)–1(d)(2), which incorporates a federal common law substantial compliance test regarding the taxpayer's identity.

## A. The Reasonable Inspection Test Under IRC § 6323(f)(4)(A)

■ Our analysis for application of the reasonable inspection test to the facts before us starts with the plain language of the statute. *United States v. Ron Pair Enters.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Unlike other definitions of terms for tax purposes which often bear little resemblance to their definitions in everyday life,[12] we can rely on the dictionary definition of the word "reasonable" to guide us in evaluating the conduct to which it refers. *United States v. McNab*, 331 F.3d 1228, 1237 (11th Cir.2003)(" 'To determine the ordinary meaning of a term, courts often turn to dictionary definitions for guidance.' "). Reasonable is defined as "what is fair, proper and moderate" under the circumstances. Black's Law Dictionary (8th

ed.2009). The word connotes use of an objective standard by which to measure the conduct of an index searcher—a common sense, nontechnical concept that deals with practical considerations on which a reasonable and prudent person would act under similar circumstances.

The word inspection means a "careful examination". Black's Law Dictionary (8th ed.2009). However, when preceded by the word "reasonable", it implies that an inspection cannot be expected to completely eliminate the possibility that a material error on the NFTL will be uncovered. *See generally Sum of $66,839.59 v. IRS*, 119 F.Supp.2d 1358, 1362 (N.D.Ga. 2000). Along the same vein, a third party cannot be required to search every possible variation of a taxpayer's name. *See generally Assocs. Fin. Serv. Co. v. Brown*, 258 Wis.2d 915, 656 N.W.2d 56 (2002).

### 1. Title Officer Versus Ordinary Prudent Person

With these definitions and principles to guide us, we consider the government's argument that the reasonableness of the inspection should be tested against the search methods used by a professional title officer. The IRS urges us to utilize this standard in our analysis for essentially two reasons. First, the IRS maintains that the vast majority of title searches are conducted by professionals. Second, title officers use a "less is more" approach with their search. As the moniker denotes, a lesser version of the taxpayer's name is used. Under that scenario, the government contends that a reasonable search would use

---

**12.** For example, "the term 'basis,'... which in tax parlance means very roughly the cost of an asset adjusted for depreciation and other expenses, has a dictionary definition that is essentially useless for tax purposes. 'Basis' therefore means as much (or as little) as the statutory context, regulations, and previous judicial decisions provides. The term 'gift' has different meanings for income, estate, and gift tax purposes, none of them really consistent with the nontax definition." 2A Singer, *Sutherland on Statutory Construction*, § 77A:1 (7th ed.2008).

the term "Crystal Cascades" only, which would have located the tax liens.

■ The plain wording of IRC § 6323(f)(4)(A), however, requires the IRS to provide notice of its tax liens through the public index. Title officers use private title plants which provide information above and beyond what is available at the local state recorder's office. Such title plants are not accessible to the public. It follows then that, although a tax lien may be discovered through a search in a title plant, it may still be outside the chain of title if it cannot be found by the appropriate method of examining the public records.

■ In addition, title officers have extensive training in searching land records. Underwriting standards dictate the extent of their search techniques depending on the stakes involved. With high stakes, the title officer may perform searches using numerous variations of the debtor's name.[13] However, it is irrelevant what types of searches title companies do, as the issue is whether a subsequent purchaser has constructive notice of the tax liens through inspection of the public records. What a title company should have or would have done to discover the liens does not control. *See Kivel,* 878 F.2d at 304.

In sum, to accommodate its error, the IRS essentially seeks to change the law of constructive notice to require that future title searches be performed only by trained individuals with elaborate and expensive equipment at their disposal. This result cannot be what Congress intended when mandating the IRS's NFTLs to impart notice through a public recording system. Accordingly, we hold as a matter of law that the reasonableness of a search should be tested against the conduct of an ordinary prudent person.

**2. Locality And The Exact–Name Search**

Although we are dealing with a federal tax statute, the standard for what constitutes a reasonable search of the public index will necessarily vary because of the nature of the particular state's indexing system. As the bankruptcy court noted, a person might use different searches in different localities, even when presented with the same name. "A searcher would construct different searches, for example, in jurisdictions that maintain only grantor-grantee indexes than he or she would if the jurisdiction permits full-name search by computer, with the added function of 'wildcards.'" *Crystal Cascades Civil, LLC,* 398 B.R. at 31.

■ That leads us to the question of what constitutes a reasonable search of the public records in Clark County, Nevada. The parties' witnesses, both of whom were title officers, agreed that an ordinary prudent person would use an exact-name search only. Common sense dictates that an exact-name search is a logical starting point under circumstances where the public is offered a computerized database in which grantors and grantees may be searched by name, such as we have here. *See generally United States v. Polk,* 822 F.2d 871 (9th Cir.1987)(government's lien against third party valid when NFTL used taxpayer's full legal name, but third party conducted search only with taxpayer's middle and last name).

Moreover, even though the index had a "wild card" feature (when the name is searched, the search results will not only

---

**13.** The IRS's witness, Betty Waters, testified that the underwriting guidelines for a company would dictate the type of search required by the title officer. She further testified that among title companies, the search would vary depending upon each company's guidelines.

contain documents with that name, but also documents that have the name searched as a root), the IRS's witness Ms. Waters testified that an index searcher of the public records would input the legal name of the entity and not use the "less is more" approach.[14] While the witnesses' opinions are not dispositive, the bankruptcy court found their testimony credible and we have no reason to question that an exact-name search is reasonable even when a "wildcard" search feature was available.

Inherent in the application of the reasonable inspection test are judgment calls about what constitutes a reasonable search, especially in today's electronic age. If a "balance must be struck between exactitude in searching—searching under the debtor's precise name, and only that name,—and latitude in searching—searching under some variant of the debtor's exact name," *Crystal Cascades Civil, LLC*, 398 B.R. at 35, we think the balance must tip in favor of subsequent purchasers, whom the statute is designed to protect. Requiring an ordinary prudent person to use variants of the debtor's exact name would not only be time intensive, but also unfair in relation to the IRS who need only check the accuracy of its tax liens.

Moreover, this approach provides a simpler rule that has general application, eliminating nuances regarding one word, two word, or three-word searches versus exact-name searches. Common sense tells us that some index searchers will be more computer savvy than others, but on the whole we cannot expect them to do the work of trained title officers. What we can expect is that all searchers would uniformly be able to come up with an exact-name search on their own.[15]

In short, after consideration of local practices and testimony by witnesses who were familiar with Clark County's system and searching capabilities, we conclude that under the circumstances here, an ordinary prudent person would use an exact-name search only when searching the land records in Clark County Nevada. We hold that the bankruptcy court did not err in deciding that such a search was reasonable as a matter of law. Such a search would not have revealed the tax liens.

### 3. Inquiry Notice

The next step in the analysis is to determine whether the search revealed facts which would have put the subsequent purchaser on notice to inquire further. *Kivel*, 878 F.2d at 304 (index searcher has a duty to investigate the documents that underlie the search). The IRS argues that the exact-name search would have put the searcher on notice that the property could be affected by liens that were filed against other entities listed on the result of the search.

According to the IRS, the second entry of the search reveals a judgment lien against numerous entities including Crystal Cascades, Crystal Cascades Inc., Crystal Cascades Civil LLC and Crystal Cascades Pools & Spas LLC. This infor-

---

**14.** At trial, the government's lawyer asked Ms. Waters: "If you were given the name Crystal Cascades Civil, LLC, and know that the [title insurance] policy is only for $10,000, is a reasonable and diligent search then to use only the exact name?" Ms. Waters: "Yes." She also testified that she would probably not do a "less is more" search unless there was a lot at stake.

**15.** Appellees' witness, Mr. Kiernan, testified that the clerk at the Recorder's Office would tell the public to go to the computer and input the name exactly as it is on the title document.

mation, the government explains, should have tipped off the searcher to conduct a second search using the two-word search of "Crystal Cascades".

That two-word search revealed the following entities, with the number of documents for each entity represented by the number in parentheses after the name: Crystal Cascades Construction (2); Crystal Cascades Inc (7); Crystal Cascades Inc Pool Division (1); Crystal Cascades LLC (2); Crystal Cascades LLC,' (1) (with the ending apostrophe distinguishing this entry from the prior entry); Crystal Cascades Pools & Spas (2); Crystal Cascades Pools & Spas LLC (10); Crystal Cascades Pools and Spas LLC (1). *Crystal Cascades Civil, LLC*, 398 B.R. at 33 n. 10.

As noted by the bankruptcy court, "there were some twenty-six other entities that a shortened search of 'Crystal Cascades' would have revealed, and to connect any of those entities back to the debtor would have required an extensive search of not only the records indexed and filed at the Clark County Recorder's Office, but also at the Nevada Secretary of State's office." The court concluded that this kind of extensive search could not be considered "reasonable" within the meaning of the statute. *Id.* at 35–36.

Our own assessment is that the two-word search the IRS proposes produces results which are unwieldy for the ordinary prudent person. We conclude that the facts which the IRS maintains put the searcher on inquiry notice were insufficient to impose a duty on the searcher to investigate over twenty-six entries and search the Nevada Secretary of State's records to find the tax liens. We hold that a reasonable inspection of the public index

simply cannot encompass the kind of extensive search the IRS proposes, as that is neither fair nor a moderate approach.

 Finally, we comment on the IRS's argument made in passing that Buenting's knowledge of debtor's various d/b/a's, including Crystal Cascades, LLC, put him on inquiry notice to search the public index under other names debtor may have used. As noted, however, in TKB, IRC § 6323(f)(4)(A) is concerned only with the notice imparted through the public indexing system and does not concern the actual or subjective knowledge of the subsequent purchaser. *TKB Int'l*, 995 F.2d at 1465 (finding that whether subsequent purchaser had actual notice of the tax liens was unimportant). This is consistent with the purpose of the statute which was "to keep the federal tax lien in line with other recorded instruments in the state recording system. . . . [and] to serve as notice to subsequent purchasers wherever possible." *Davis v. United States*, 705 F.Supp. 446, 453 (1989). We conclude as a matter of law that the plain language of the statute does not contemplate any type of subjective analysis. Rather, the focus is on whether an ordinary prudent person could discover the tax liens in the public indexing system.

**B. The Substantial Compliance Test Is Distinct From the Reasonable Inspection Test Under § 6323(f)(4)(A)**

 Finally, we answer the last question as to whether the result in this case needs to be reconciled with Treas. Reg. § 301.6323(f)–1(d)(2) which requires that the NFTL "must identify the taxpayer." [16] The IRS devotes a significant por-

16. In a sense, the IRS back peddles into this argument. According to the IRS, since the bankruptcy court held that an exact-name search standing alone was reasonable under the circumstances here, then that must mean that the IRS must put the exact name of the taxpayer on the NFTL. The IRS argues that this is inconsistent with the federal common

414

tion of its brief and argument to the substantial compliance test,[17] which arose from circumstances similar to those here— discrepancies in the taxpayer's name on the NFTL.

The seminal and oft-cited case is *United States v. Sirico*, 247 F.Supp. 421 (S.D.N.Y. 1965) where the issue in the case was whether a valid and properly recorded NFTL was subordinated as against a subsequent mortgagee solely by reason of the fact that the taxpayer's initial instead of her full name was set forth. The court stated:

> The mere fact that a full name is not given or that there is an addition, omission or substitution of letters in a name, or even errors, does not, in and of itself, invalidate the notice. The essential purpose of the filing of the lien is to give constructive notice of its existence. The test is not absolute perfection in compliance with the statutory requirement for filing the tax lien, but whether there is substantial compliance sufficient to give

constructive notice and to alert one of the government's claim.

The *Sirico* court found that under the facts, it was difficult to understand how one searching the public land records could have missed the notice of tax lien. The court noted that not only was the correct surname of the taxpayer listed, but her residence address corresponded with the premises, which was the subject of the title search. The court concluded that the filing of the lien under the circumstances was adequate to give constructive notice to interested persons.[18]

The government's reliance on the substantial compliance test to set the legal standard under IRC § 6323(f)(4)(A) is misplaced. The IRS understates the test by omitting that the essential purpose of the NFTL was to give constructive notice of the government's claim. At the same time, the IRS overstates the test's precedential importance because the substantial compliance test evolved prior to November 6, 1978 when IRC § 6323(f) was amended to include subsection (4)(A) to read as it does today.[19]

law standard that has evolved regarding discrepancies in the taxpayer's name on the notice. The IRS maintains that its NFTLs adequately identified the taxpayer when they were filed with the name debtor used on its EIN application. However, our inquiry in this appeal turns on whether a reasonable inspection would reveal the lien, not whether the IRS complied with its own regulation.

17. Internal Revenue Manual ("IRM") § 5.17.2.3.5 (12–14–2007) states: "A number of controversies concern errors in the name of the taxpayer as it appears on the NFTL. The general rule is that if the name on the notice is not identical to the correct name of the taxpayer, then the NFTL is still valid if the NFTL is sufficient to put a third party on notice of a lien outstanding against the taxpayer. This is known as the substantial compliance test. *United States v. Sirico*, 247 F.Supp. 421 (S.D.N.Y.1965)."

18. The "substantial compliance test" is an anglicized version of the common law rule of

"idem sonans" where "given a variance in the spelling of two names, if the correct pronunciation of the two names results in practically identical sounds, the names are held to designate the same person." 57 Am.Jur.2d Name § 60 (2008). At common law, a party typically invoked the doctrine of idem sonas to avoid the invalidation of a document, despite a variance in the spelling of a particular name in the document, when the document had already been exchanged between, or acknowledged by, people who knew each other. *Tibbets v. Kiah*, 2 N.H. 557–58 (1823). This is not the situation we are confronted with here.

19. Prior to amendment, paragraph (f)(4) read as follows: "(4) Index. The notice of lien referred to in subsection (a) shall not be treated as meeting the filing requirements under paragraph (1) unless the fact of filing is entered and recorded in a public index at the district office of the Internal Revenue Service for the district in which the property subject to the lien is situated."

The amended statute does not mention "substantial compliance" in conjunction with the validity of the NFTL against a subsequent purchaser without actual notice. Rather, the statute requires that the NFTL be "entered and recorded in a public index ... in such a manner that a reasonable inspection of the index will reveal the [lien]." Thus, the plain language of the statute applies a reasonable inspection test when the priority of the IRS's lien is at issue.

It is questionable whether we need to consider the extent of the IRS's compliance with identifying the taxpayer on its notice in this context.[20] Our hesitation occurs because the Ninth Circuit analysis of IRS lien priority has focused on the reasonable inspection test even when the NFTL uses the taxpayer's correct legal name. *See Kivel,* 878 F.2d at 302 (court determined that it need not decide whether the NFTL filed under the taxpayer's full legal name was valid against a subsequent purchaser, but whether the way the notices were filed complied with 26 U.S.C. § 6323(f)(4), as that was the statute which governed the validity of liens in California); *TKB Int'l,* 995 F.2d 1460 (tax liens filed in exact name of taxpayer held invalid against subsequent purchaser who acquired property that was subject to fraudulent conveyance and fraudulent nature of transaction was not apparent on face of deed); *cf. Walsh v. United States (In re Focht),* 243 B.R. 263, 267 (W.D.Pa.1999)(stating that first step in determining whether tax lien was valid was to evaluate whether the Form 668 notice substantially complied with the statutory requirement of identifying the taxpayer).

Lastly, we perceive no conflict between the bankruptcy court's holding that an exact-name search constitutes a reasonable search within the meaning of IRC § 6323(f)(4)(A) and the IRS's Treas. Reg. § 301.6323(f)–1(d)(2) which requires that the NFTL "must identify the taxpayer."

## VI. CONCLUSION

■ The IRS suggests that the bankruptcy court essentially allowed the government's fortunes to rise and fall based on whether or not a person off the street could retrieve the government's liens when a search was performed using only the debtor's exact name. But it is Congress which has provided specific rights to subsequent purchasers and the statute at issue here implements a strong policy against secret liens. Notice is the key and IRC § 6323(f)(4)(A) adheres to the notice systems implemented by the states. The tax liens here were outside the chain of title and, therefore, did not provide the notice contemplated under the statute, since a reasonable inspection would not have uncovered them.

For the reasons stated above, we AFFIRM.

---

**20.** In actuality, the substantial compliance test and the reasonable inspection test are but opposite sides of one coin. The substantial compliance test focuses on the notice itself and whether the IRS substantially complied with Treas. Reg. § 301.6323(f)–1(d)(2) by identifying the taxpayer so as to give constructive notice of the government's claim. In contrast, the reasonable inspection test focuses on whether the filing is recorded in such a manner that a searcher could find the NFTL in the public records.